D. Maimon Kirschenbaum
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
**JEFFREY M. GOLDMAN,**

       **Plaintiff,**

       v.

**SOL GOLDMAN INVESTMENTS LLC,**
**SOLIL MANAGEMENT, LLC and JANE**
**H. GOLDMAN,**

       **Defendants.**
-------------------------------------------------------x

**FIRST AMENDED COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Jeffrey M. Goldman alleges as follows:

## INTRODUCTION

1. Plaintiff Jeffrey M. Goldman dutifully served Solil Management, LLC; Sol Goldman Investment LLC; and the whims of Jane H. Goldman for nearly 20 years.

2. At 69 years old, Plaintiff Goldman was one of Defendants' most successful attorneys on a team that represents Defendants in many hundreds of housing court cases each year.

3. When Covid-19 shut down the courthouses, and most of New York City, Plaintiff Goldman continued working from home and advocating for Defendants.

4. But when Plaintiff Goldman informed Defendants that his underlying health conditions made returning to the office potentially life-threatening, Defendants terminated him for his age and perceived disability.

5. Defendants terminated Plaintiff Goldman for not being able to physically appear in court at a time when all housing court appearances were being conducted remotely anyway. To date, all housing court proceedings continue to be held remotely.

6. After two decades of dedicated service, Defendants left Plaintiff Goldman, without a job and without health insurance at nearly 70 years old in the midst of a deadly pandemic.

## JURISDICTION AND VENUE

7. Plaintiff Jeffrey M. Goldman brings this action against Defendant Sol Goldman Investment LLC, Solil Management LLC, and Defendant Jane H. Goldman, alleging claims of discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq.; the New York State Human Rights Law ("NYSHRL"); N.Y. Exec. Law §§ 290, et seq. and the New York City Human Rights Law ("NYCHRL"), N.Y. Admin. Code §§8-101 et seq.

8. This Court has diversity jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332, as Plaintiff is a resident of New Jersey and Defendants are residents of New York, and the value of Plaintiff's claims exceeds $75,000.

9. Venue is proper in this District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

10. Defendant Sol Goldman Investments LLC ("Defendant SGI" or "SGI") is a New York limited liability company with a place of business at 1185 6th Avenue, New York, New York. Upon information and belief, Defendant SGI makes all business decisions for a network of corporations that own real estate throughout New York City. Upon information and belief, Defendant SGI is jointly owned by a group of trusts and the Sol Goldman Estate, all of which are co-directed by Defendant Jane Goldman and her brother Allen H. Goldman.

11. Defendant Solil Management LLC ("Defendant Solil") is a New York limited liability company with a place of business at 1185 6th Avenue, New York, New York. Upon information and belief, Defendant Jane Goldman directs the day-to-day operations of Defendant Solil. Defendant Solil is a payroll company set up to pay the salaries for all of Defendant SGI's employees and all of the employees of Defendant SGI's numerous real estate properties.

12. Defendant SGI and Defendant Solil, collectively, referred to herein as the "Corporate Defendants."

13. Jane H. Goldman ("Defendant Jane Goldman") is an individual co-owner and operator of Defendant SGI and Defendant Solil. Defendant Jane Goldman, along with Allen H. Goldman, personally controls the day-to-day business of the Corporate Defendants. Defendant Jane Goldman controls when, where and how work is done for the Corporate Defendants and has the power to hire and fire employees of the Corporate Defendants. Defendant Jane Goldman is a resident of New York.

14. Plaintiff Jeff Goldman ("Plaintiff Goldman" or "Plaintiff") resides in Paramus, New Jersey and was an employee of Defendants from June of 2000 until his wrongful termination on June 24, 2020.

**FACTS**

15. Since June of 2000, Plaintiff Goldman worked for Defendants as an attorney advocating the claims of Defendants in connection with Defendants' hundreds of commercial and residential real estate properties throughout New York City.

16. Plaintiff Goldman served as one of the Corporate Defendants' in-house attorneys under the supervision of Defendant Jane Goldman and Defendants' General Counsel, Judith M. Brener.

17. Plaintiff Goldman's responsibilities included representing Defendants, primarily Defendant SGI and the hundreds of properties it owns, in a wide array of legal contexts. Plaintiff advocated for the Defendants as petitioners in housing court proceedings involving nonpayment of rent, "use and occupancy" claims, and holdover proceedings in rent-regulated and free market properties. He defended the Defendants in proceedings commenced against them by the City of New York or individual tenants in connection with the conditions in Defendants' properties. In addition, Plaintiff represented Defendants in Criminal Court proceedings with respect to New York City building and fire codes. Further, Plaintiff represented Defendants in administrative, civil, and appellate proceedings.

18. Throughout Plaintiff's tenure, he recovered hundreds of apartments from tenants, which enabled Defendants to dramatically increase the rents that they collected for those properties.

19. The bulk of Plaintiff Goldman's work comprised representing Defendant SGI's properties. Each of these buildings is set up as an individual limited liability company. Defendant SGI is the sole entity empowered to make management decisions affecting the subject properties. Defendant SGI also asserts full financial control over the properties.

20. Regardless of the entity Plaintiff represented in any given case, Defendant Goldman, in her capacity as owner and operator of Defendant SGI, controlled decision-making on every level. If Plaintiff, based on his four decades of experience, saw that it was financially beneficial to settle a case on certain terms, he could not make that decision without clearing it with Defendant Goldman. Even Ms. Brener, his direct supervisor could not make final decisions, and would often direct him to Defendant Goldman for approvals. Even while Defendants' many hundreds of properties were represented by a team of in-house attorneys, Defendant Goldman directly controlled how litigation proceeded on behalf of the Corporate Defendants – whether and on what terms to settle, whether to appeal.

21. Upon information and belief, Defendant Solil is a company with no revenue that is purely set up to handle payroll for Defendant SGI's employees and each of its subsidiaries' employees. Defendant Solil also pays for the expenditures connected with Defendant SGI's properties.

22. Ultimately, it seems, Defendant Goldman was such a micro-manager of the Corporate Defendants' affairs that she wanted to have their employees in the office, even during a deadly pandemic.

23. During Plaintiff Goldman's lengthy tenure with Defendants, he was one of Defendants' most successful and versatile in-house attorneys. However, Plaintiff Goldman's successes in court could not overcome the blatant bias Defendants' have for individuals with disabilities and older employees.

24. In early March, the novel coronavirus disease, referred to as "Covid-19," began to wreak havoc on New York City.

25. On or about March 9, 2020, Defendants recommended certain safety restrictions for its employees in response to the risks posed by the swift spread of Covid-19.

26. Beginning March 17, 2020, Defendants instructed Plaintiff, and the rest of Defendants' legal staff, to work from home. Unbeknownst to Plaintiff, an individual in his building had already tested positive for Covid-19 as of March 10, 2020.

27. Defendants provided Plaintiff with a computer, and Plaintiff Goldman continued to fulfill all of his duties from home.

28. Within a week of Plaintiff starting to work from home, the New York State Court Unified Court System shut down nearly all in-person functions as a result of Covid-19. And, by April of 2020, the New York State Court Unified Court System made almost all of its functions virtual.

29. Working remotely became the norm and a lifesaving precaution for many of New York City's employees, including Plaintiff. By April, nearly 170 New York State Court employees who continued showing up for work contracted Covid-19; and four employees – including three judges and a clerk – succumbed to the virus.

30. The threat of Covid-19 is particularly dangerous for Plaintiff Goldman.

31. In addition to the Covid-19 related risks resulting from Plaintiff's age, he has many underlying conditions that doctors and experts agree cause people to be particularly susceptible to Covid-19 and much more likely to die as a result of catching the virus.

32. Because of Plaintiff's underlying conditions, including his age and ongoing symptoms caused by his proximity to the September 11, 2001 terrorist attack on the World Trade Center, Plaintiff's doctor advised him to continue to work from home and take strict measures to avoid exposure to the virus.

33. As a result, Plaintiff Goldman stopped going to stores, stopped worshipping at his synagogue, and even stopped having in-person visits with his two daughters who are physicians themselves. Although difficult and isolating for Plaintiff Goldman, these precautions meant the difference between his health and contracting a potentially fatal illness.

34. From home, Plaintiff Goldman continued to move Defendants' cases forward. Plaintiff drafted agreements between Defendants and tenants that saved Defendants tens of thousands of dollars. Plaintiff was able to address at least 15 cases, most of which had been initiated by attorneys who had since left Defendants' employ, in an effort to resolve them.

35. Plaintiff Goldman also continued motion practice in Defendants' cases and correspondence with attorneys and tenants in connection with Defendants' multitude properties.

36. In mid-June 2020, the New York State Court Unified Court System continued to require that all case filings be submitted online and continued to conduct most proceedings virtually. Regardless, Defendant Jane Goldman decided she wanted her legal staff to return to work in the office located at 1185 6th Avenue, New York, New York by June 22, 2020.

37. Out of all the tenants in the 50-story building where Plaintiff worked, Defendants are one of the only tenants requiring employees to return to work in person.

38. In response to Defendant Jane Goldman's demand that her legal staff return to the office, Plaintiff Goldman submitted a letter from his doctor on June 17, 2020, stating that he should not return to the office or court because of his many risk factors. Plaintiff Goldman clearly needed this accommodation to protect himself from exposure to the increasingly widespread coronavirus.

39. At that time, State court proceedings remained primarily virtual, and Plaintiff Goldman had been successfully litigating and meeting with judges, court staff and opposing

counsel via Skype since March 2020. Thus, Plaintiff Goldman's request to continue working from home was certainly reasonable.

40. Even now, as of the date of this Amended Complaint, the housing court in New York City remains closed to in-person appearances for the majority of its proceedings and has expanded its virtual operations.

41. However, Plaintiff's supervisor, Judith Brener, inexplicably protested Plaintiff's doctor's instructions, writing in an email, "You are our court attorney!!!!! Help!"

42. Despite Ms. Brener's frustration, Plaintiff Goldman continued to work from home pursuant to his doctor's advice. In fact, the following day, on or about June 19, 2020, Plaintiff filed a complex post trial memorandum of law on Defendants' behalf.

43. On June 24, 2020 Defendant Jane Goldman called Plaintiff and insisted that Plaintiff needed to return to the office and also resume physical appearances in court. Strangely, Defendant Jane Goldman made this demand at a time when the housing court was still holding all proceedings remotely and physical appearances were just a hypothetical and future possibility.

44. When Plaintiff refused to put his life in danger, Defendant Jane Goldman told Plaintiff he should just retire. Moments later, Defendant Jane Goldman terminated Plaintiff based on his (actual and/or perceived) disability and in retaliation for his request for a reasonable accommodation.

45. Defendant Jane Goldman told Plaintiff that she was furloughing him until he could physically go to court. In fact, Defendant Jane Goldman terminated Plaintiff that day. Within an hour, Defendants suspended Plaintiff's remote computer and cell phone access. Defendants also cancelled Plaintiff's health insurance coverage immediately.

46. Plaintiff was two days shy of his 20-year anniversary with Defendants.

47. After 20 years of service, Defendants left Plaintiff without his regular income and with no health insurance overnight – in the midst of Covid-19. Defendants did not even offer to pay Plaintiff for the 20 or more days of unused vacation and sick leave he had accumulated.

48. As a result of his sudden unlawful termination, Defendants left Plaintiff without any health insurance immediately upon his termination. Plaintiff had to cancel critical doctors' appointments and restrict his activities even more severely in order to reduce his risk of exposure to Covid-19 or any other health hazard.

49. Plaintiff's termination wasn't the first time Defendant Jane Goldman showed her disdain for employees she perceived as old and disabled.

50. For example, in or about 2012, Plaintiff Goldman experienced symptoms that were initially suspected as being caused by cancer. When Plaintiff Goldman requested sick leave from Defendant Jane Goldman, she responded, "If you're sick, leave!" Defendant Jane Goldman's intention was clear then, just as it was in June – if Plaintiff is in any way sick or disabled, she wants him out of his job.

51. In addition, approximately one year ago, when Defendants' General Counsel, Ms. Brener, wanted to criticize Plaintiff's work, she also told him that he's "too old" and then mockingly impersonated an elderly person talking.

52. On June 25, 2020, Defendants circulated an email to all of Plaintiff Goldman's colleagues announcing that Plaintiff had retired as of the previous day.

53. Since Plaintiff's unlawful termination, one of Plaintiff Goldman's coworkers, who had been working in the office, tested positive for Covid-19 despite being asymptomatic.

Had Plaintiff agreed to return to the office, his likely interactions with this colleague may have proven fatal.

54. Further, Defendants' requirement that employees appear in court and come into the office has not been applied in the same way to younger employees. To date, at least one other employee, someone in their 30s, is now permitted to work from home.

55. In addition, Defendants replaced Plaintiff with another employee that is significantly younger than Plaintiff (mid 30s).

56. Plaintiff Goldman has suffered enormous damage to his professional reputation and has endured a debilitating amount of stress from this discriminatory termination and the devastating effects of losing the security of his health care coverage during an international pandemic.

57. Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on September 25, 2020, over 60 days prior to the date of filing this Amended Complaint.

**FIRST CLAIM FOR RELIEF**
**Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq.**
**Age Discrimination**

58. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

59. In violation of the ADEA, Defendants intentionally discriminated against Plaintiff on the basis of his age.

60. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary.

61. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

62. As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to lost wages and damages for emotional distress, physical injuries, and medical treatment, and such other legal and equitable relief as this Court deems just and proper.

### SECOND CLAIM FOR RELIEF
### New York State Human Rights Law – N.Y. Exec. Law §§ 290 *et seq.*
### Age and Disability Discrimination

63. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

64. In violation of NYSHRL, Defendants intentionally discriminated against Plaintiff on the basis of his age and perceived disability.

65. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary.

66. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

67. As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to lost wages and damages for emotional distress, physical

injuries, and medical treatment, and such other legal and equitable relief as this Court deems just and proper.

## THIRD CLAIM FOR RELIEF
**New York State Human Rights Law – N.Y. Exec. Law §§ 290 *et seq.***
**Retaliation**

68. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

69. In violation of the NYSHRL, Defendants retaliated against Plaintiff for his requesting an accommodation.

70. Defendants' retaliation was sufficiently severe so as to affect the terms of Plaintiff's employment.

71. Defendants' conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected civil rights.

72. As a direct and proximate consequence of Defendants' retaliation against Plaintiff, he has suffered, and continues to suffer, substantial monetary and non-monetary damages, including, but not limited to, emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, humiliation and anguish.

73. As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to: damages for lost wages, emotional distress, punitive damages, post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

## FOURTH CLAIM FOR RELIEF
**New York City Human Rights Law ("NYCHRL")**
**N.Y. Admin. L. §§8-101 et seq. – Age and Disability Discrimination**

74. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

75. A copy of this Amended Complaint will be delivered to the New York City Corporation Counsel.

76. In violation of the NYCHRL, Defendants discriminated against Plaintiff on the basis of his age and perceived disability.

77. As a direct and proximate result of Defendants' discrimination against Plaintiff, he has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary.

78. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

79. Defendants' conduct is malicious, intended to injure and was done with reckless indifference to Plaintiff's statutorily-protected civil rights.

80. As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to lost wages, damages for emotional distress, physical injuries, and medical treatment; punitive damages; attorneys' fees and costs; and such other legal and equitable relief as this Court deems just and proper.

## FIFTH CLAIM FOR RELIEF
### NYCHRL Violations, N.Y. Admin. Code §§ 8-107(7) – Retaliation

81. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

82. In violation of NYCHRL, Defendants retaliated against Plaintiff for requesting an accommodation.

83. As a direct and proximate consequence of Defendants' retaliation against Plaintiff, Plaintiff suffered, and continues to suffer, substantial monetary damages, including, but not limited to, a loss of income and employment benefits.

84. As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to backpay, lost employment benefits, as well as front pay, liquidated damages, post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

A. An award of damages, according to proof, including, back pay, front pay, compensatory damages, emotional distress damages, liquidated damages, and punitive damages, to be paid by Defendants;

B. Penalties available under applicable laws;

C. Costs of action incurred herein, including expert fees;

D. Attorneys' fees;

E. Pre-judgment and post-judgment interest, as provided by law; and

F. Such other and further legal and equitable relief as this Court deems necessary, just and proper.

| | |
|---|---|
| Dated: New York, New York<br>December 3, 2020 | Respectfully submitted,<br><br>JOSEPH & KIRSCHENBAUM LLP<br><br>By: */s/ D. Maimon Kirschenbaum*<br>D. Maimon Kirschenbaum<br>Leah Seliger<br>32 Broadway, 5th Floor<br>New York, NY 10279<br>Tel: (212) 688-5640<br>Fax: (212) 688-2548<br><br>*Attorneys for Plaintiff* |

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which he has a right to jury trial.