# AG&A | ANSELL GRIMM & AARON PC
## COUNSELORS AT LAW

**365 RIFLE CAMP ROAD**
**WOODLAND PARK, NEW JERSEY 07424**
973-247-9000
973-247-9199 (FAX)

1500 LAWRENCE AVENUE
CN7807
OCEAN, NEW JERSEY 07712
732-922-1000
732-922-6161 (FAX)

214 CARNEGIE CENTER
SUITE 112
PRINCETON, NEW JERSEY 08540
609-751-5551

140 GRAND STREET
SUITE 705
WHITE PLAINS, NEW YORK 10601
800-569-3886

41 UNIVERSITY DRIVE
SUITE 400
NEWTOWN, PENNSYLVANIA 18940
267-757-8792

www.ansellgrimm.com

RICHARD B. ANSELL ‡
PETER S. FALVO, JR.
JAMES G. AARON
PETER B. GRIMM
MITCHELL J. ANSELL
BRIAN E. ANSELL‡
ALLISON ANSELL▫†
MICHAEL V. BENEDETTO
DAVID B. ZOLOTOROFE
DONNA L. MAUL•
RICK BRODSKY•
LAWRENCE H. SHAPIRO•▫
ROBERT A. HONECKER, JR. ▫§
JENNIFER S. KRIMKO
FREDERICK C. RAFFETTO~
JOSHUA S. BAUCHNER•
DAVID J. BYRNE▫
ANDREA B. WHITE •·
EDWARD J. AHEARN

JASON S. KLEIN•
MELANIE J. SCROBLE
BARRY M. CAPP•∆
DOUGLAS A. DAVIE•
ELYSA D. BERGENFELD
RICHARD B. LINDERMAN▫
CRAIG D. GOTTILLA•▫
KEVIN M. CLARK
KRISTINE M. BERGMAN▫
JESSICA T. ZOLOTOROFE
TARA K. WALSH•
RAHOOL PATEL•
NICOLE D. MILLER▫
ALFRED M. CASO
ANTHONY J. D'ARTIGLIO•
SETH M. ROSENSTEIN•
ASHLEY V. WHITNEY•
COURTNEY E. DUNN•

**COUNSEL**
HON. ANTHONY J. MELLACI, JR., J.S.C. (RET)
STACEY R. PATTERSON•
JAMES A. SYLVESTER
ROY W. HIBBERD ▽∆
HON. RAYMOND A. HAYSER, J.T.C. (RET)
KELLY M. CAREY

**RETIRED**
ROBERT I. ANSELL
LISA GOLDWASSER•

**IN MEMORIAM**
LEON ANSCHELEWITZ (1929-1986)
MAX M. BARR (1929-1993)
MILTON M. ABRAMOFF (1935-2004)
DAVID K. ANSELL† (1962-2019)

**LICENSED ALSO IN:**
∆ D.C. ▫ MASS. • N.Y. * WASH.
▫ PENN. ~ FLA. ∇ CALIF.

† FELLOW, AMERICAN ACADEMY OF MATRIMONIAL LAWYERS

‡ CERTIFIED BY THE SUPREME COURT OF NEW JERSEY AS A CIVIL TRIAL ATTORNEY

§ CERTIFIED BY THE SUPREME COURT OF NEW JERSEY AS A CRIMINAL TRIAL ATTORNEY

• CERTIFIED BY THE SUPREME COURT OF NEW JERSEY AS A MATRIMONIAL LAW ATTORNEY

November 18, 2021

**Via ECF**

Honorable Alison J. Nathan, U.S.D.J.
United States District Court for the
    Southern District of New York
40 Foley Square, Room 2102
New York, New York 10007

    Re:   *Jeffrey M. Goldman v. Sol Goldman Investments LLC, et al.*
           Civil Action No.: 1:20-cv-6727

Dear Judge Nathan:

This firm represents Defendants Sol Goldman Investments LLC ("SGI"), Solil Management, LLC ("Solil"), and Jane H. Goldman (collectively, "Defendants") in the above styled matter. In accord with Magistrate Judge Freeman's permission, please accept this letter brief in lieu of a more formal brief in support of Defendants' motion to sanction Plaintiff Jeffrey M. Goldman ("Plaintiff") for the intentional, bad-faith spoliation of evidence and to dismiss the Amended Complaint with prejudice, pursuant to Federal Rule of Civil Procedure 37.

Honorable Alison J. Nathan, U.S.D.J.
November 18, 2021
Page 2

## STATEMENT OF FACTS

The sum and substance of this matter is straightforward. Plaintiff alleges that Defendants engaged in unlawful age and disability discrimination and retaliation in violation of various federal, state, and local laws, when he alleges that he was fired from his position as an in-house attorney. Defendants reject these allegations and contend that Plaintiff voluntarily resigned from his employment with Solil after he tried to force Solil to fire him so he could collect enhanced unemployment benefits.[1]

There have been two recent developments in this case that are troubling and the subject of this motion. First, during his deposition, Plaintiff testified that he deleted an email sent to his primary care physician, Dr. Katz, wherein he requested a "doctor's note" permitting him to work from home. Declaration of Joshua S. Bauchner ("Bauchner Decl."), Ex A. at 84:20-85:10. Defendants only were able to secure this email upon deposing Dr. Katz.[2] The May 28, 2020 email states, in pertinent part:

---

[1] It is worth noting that Plaintiff's allegations have changed dramatically since the filing of his Complaint. Although he initially alleged a host of discriminatory conduct led to his termination, he now only claims that a "perceived disability" -- his age -- after 20 years of employment suddenly led to his firing. Indeed, Plaintiff testified that a host of allegations in his Complaint were false including, *inter alia*, that: (i) the blatant and endemic discriminatory practices at Solil leading to his alleged termination simply do not exist, *compare* Am. Comp. ¶¶ 49-51 & 54-55 *with* Ex. A at 66:1-69:14 & 74:20-75:4;[1] (ii) he did not still suffer symptoms from exposure to 9/11, *compare* Am. Comp. ¶ 32 *with id*. at 83:3-84:2; (iii) he was not furloughed, but fired, *compare* Am. Comp. ¶ *with id*. at 97:12-98:3; (iv) he was not entitled to unused vacation and sick time, *compare* Am. Comp. ¶ 45 *with id*. at 99:24-100:11; (v) he suffered no harm to his reputation, *compare* Am. Comp. ¶ 56 *with id*. 109:7-10 & 109:25-110:13; and, shockingly, (vi) he never asked for a reasonable accommodation, *compare* Comp. ¶¶ 38 & 43 *with id*. at 126:1-17, although he then recognized the error of his candor and changed his testimony. *Id*. at 126:20-23.

[2] We note that the May 28, 2020 email was not initially provided as part of Dr. Katz's medical records production even though the doctor later testified that "when a patient emails me, I take it and usually copy it and put it in the[ir] medical records." Bauchner Decl., Ex. C at 38:24-39:6.

Honorable Alison J. Nathan, U.S.D.J.
November 18, 2021
Page 3

> My employer is going to gradually open probably in @ 2 weeks. I anticipate that I will be expected to return at some point. Sheryl and I have been strongly quarantined. I have rarely left the house. I would greatly appreciate it if you can provide me with a very strong emphatic letter that states that I have been your patient for many years and it [i]s your strong medical opinion that I cannot return to work in an office in New York City or the courts in New York City due to a number of underlying health issues. ***Either they will terminate my employment and I will file for unemployment or I will retire depending on discussions with them.***

Bauchner Decl., Ex. C (emphasis added).

Notably, Plaintiff's counsel claimed at Dr. Katz's deposition that "[t]he plaintiff produced everything he has in his possession." Bauchner Decl., Ex. B at 40:3-4. But, this begs a simple question: How did the May 28, 2020 email disappear from Plaintiff's "Sent" folder unless he intentionally deleted it? Most people delete emails from their "Inbox" folder; to delete an email from the "Sent" folder requires the affirmative step of opening that folder, finding the email, and manually deleting it.

This leads to one of two conclusions: (1) Plaintiff had access to the May 28, 2020 email but did not disclose it during discovery despite it being responsive to four requests[3] and not

---

[3] In particular, we note that the May 28, 2020 email was responsive to the following requests in Defendants' First Set of Requests for the Production of Documents: (4) "All documents and communications between Plaintiff and any third parties relating to or which concern the subject matter of the allegations set forth in the Complaint" and (7) "All documents and communications between Plaintiff and any third parties relating to or which concern his June 17, 2020 request for a work-from-home accommodation."

In addition, it was responsive to the following requests in Defendants' Second Set of Requests for the Production of Documents: (2) "All documents and communications relating to or which concern the "many underlying conditions" referenced in paragraph 31 of the Amended Complaint, including but not limited to patient histories, office notes, test results, referrals, consults, and similar records" and (3) "All documents and communications relating to or which concern the "underlying conditions" and/or "ongoing symptoms" referenced in paragraph 32 of the Amended Complaint, including but not limited to patient histories, office notes, test results, referrals, consults, and similar records."

protected by any privilege, or (2) Plaintiff intentionally deleted the email despite knowing that he was going to institute litigation and, thereby, spoliated material evidence (which was only thwarted and discovered because Dr. Katz kept a copy of the email). Either one of these situations is highly troubling, to say the least, particularly as Plaintiff is an attorney.

Second, Magistrate Judge Freeman recently held a settlement conference with the parties. Several days before the settlement conference, Plaintiff unexpectedly produced numerous, additional documents, and amended his Initial Disclosures to add an individual with knowledge of the facts, despite the fact that *discovery was closed* and these documents and the identity of the individual were known to Plaintiff and in his possession for more than a year. In this last-minute, late Friday afternoon document production, there was a July 3, 2020 email Bates-stamped P0341, in which Plaintiff further *admitted* to the spoliation of evidence., stating: "I erased the Solil phone & will return it those bitches." Bauchner Decl., Ex. D. This motion now follows.

## LEGAL STANDARD

Rule 37(e) requires the preservation of electronically stored information ("ESI"). In particular, the Rule states:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> (A) presume that the lost information was unfavorable to the party;
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> (C) dismiss the action or enter a default judgment.

Honorable Alison J. Nathan, U.S.D.J.
November 18, 2021
Page 5

The Second Circuit has held that "[e]ven without a discovery order, a district court may impose sanctions for spoliation, exercising its inherent power to control litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999); *see also Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72 (S.D.N.Y. 1991) ("Courts thus have the power to sanction the destruction of evidence, whether that authority is derived from Rule 37 or from their inherent powers.").

"A party seeking an adverse inference instruction (or other sanctions) based on the spoliation of evidence must establish the following three elements: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind' and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y. 2004). In this Circuit, "[w]hen evidence is destroyed in bad faith (*i.e.*, intentionally or willfully), that fact alone is sufficient to demonstrate relevance." *Id.* at 431.

## LEGAL ARGUMENT

Defendants easily can establish all three elements required for the Court to conclude that Plaintiff engaged in the spoliation of evidence. First, Plaintiff had an obligation to preserve the contents of his work-issued cell phone and his personal email account. While we do not know exactly when Plaintiff deleted the contents of his work phone, we do know that he did *after* he left his employment with Solil (in late June 2020) and *before* July 3, 2020, when he sent the email admitting: "I erased the Solil phone & will return it those bitches." Bauchner Decl., Ex. D. We also know that Plaintiff clearly contemplated leaving his employment with Solil and filing suit against Defendants at least a month earlier because he sent an email on May 28, 2020, to his primary care physician, in which he confirmed this intention, stating: "Either they will terminate

Honorable Alison J. Nathan, U.S.D.J.
November 18, 2021
Page 6

my employment and I will file for unemployment or I will retire depending on discussions with them."  Bauchner Decl., Ex. C.

First, as the May 28, 2020 email unequivocally confirms that Plaintiff was anticipating litigation at this time, he was under an affirmative duty to preserve both that communication and anything thereafter, including the contents of his work-issued cell phone.  *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) ("The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.").  Indeed, Plaintiff has been a licensed attorney in the State of New York since September 12, 1979, so there can be no dispute that he was aware of this obligation.

Second, there is no question that the records were destroyed with a "culpable" state of mind, which has been interpreted to mean "that the evidence was destroyed knowingly, even if without intent to [breach a duty to preserve it], or negligently." *Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 503 (S.D.N.Y. 2013) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002)).  Here, Plaintiff plainly admits that he intentionally deleted the contents of his work-issued cell phone in the July 3, 2020 email when he admits:  "I erased the Solil phone[.]"  Bauchner Decl., Ex. D.  And, if that were not clear enough, he then finishes the rest of his sentence by saying "& will return it to those bitches;" referring to Jane Goldman, a corporate principal, and Judy Brener, its in-house counsel.[4]  *Id*.

---

[4] Plaintiff's unprofessional and insulting behavior is not limited to Ms. Goldman and Ms. Brener.  In an exchange including his counsel and Dr. Katz, a witness who was to be deposed by the undersigned, Plaintiff referred to counsel as "a certified dirtbag," risking tainting the witness in advance of his examination.  Bauchner Decl., Ex. E.

Honorable Alison J. Nathan, U.S.D.J.
November 18, 2021
Page 7

He also has not and cannot explain how his May 28, 2020 email to Dr. Katz was missing from the "Sent" folder of his personal email account, other than by him deleting it. Undoubtedly, Plaintiff's own words (combined with his decades of experience as an attorney) make it clear that he acted intentionally – and with bad faith – when he deleted the contents of his work-issued cell phone prior to returning it to Solil and when he erased the May 28, 2020 email from his personal email account.

Third, relevance is presumed in this Circuit if the evidence – as is the case here – was destroyed in bad faith. *See, e.g.*, *Bryant v. Gen. Cas. Co.*, 337 F.R.D. 1, 6 n.4 (N.D.N.Y. 2020) ("Where, as here, a party destroys evidence 'in bad faith or in a grossly negligent manner,' the third factor; i.e., the relevance of the destroyed evidence, may be presumed.") (citing *Dorchester Fin. Holdings Corp. v. Banco BRJ S.A.*, 304 F.R.D. 178, 182 (S.D.N.Y. 2014)).

Even in the absence of the presumption of relevance, Plaintiff's deleted phone records and texts, and the unproduced May 28, 2020 email, go to the heart of this action. Indeed, Plaintiff, himself, is now subpoenaing Verizon to secure his phone records admitting to their relevancy.

The question of whether Plaintiff ever even made a request for a reasonable accommodation is the central dispute as, other than sending his contrived doctor's note, Plaintiff never once contacted anyone at Solil to discuss any accommodation or to inquire into the numerous safety precautions undertaken by Solil. Plaintiff's willful ignorance of these safety precautions and his refusal to engage in an interactive process only confirms that his purported request was pretextual and preplanned; *i.e.*, he wanted to be fired to collect enhanced unemployment.

Plaintiff also admitted the existence of his plan, further establishing the relevancy of the destroyed evidence, in his conversation with Jane Goldman. During her deposition, Jane Goldman

recounted her conversation with Plaintiff, in which he expressed his clear desire not to return to work in the office or to court:

> … I was shocked that he had decided that he was no longer coming into the office and no longer going to court, which was his primary responsibility, so I gave him a call. I was surprised he hadn't called me himself, considering, as you said, that he's been a long-term employee, that he didn't contact me personally, so I took that on myself and I called him, at which point he made it clear that he had no intention of coming back to the office. I said, [w]ell, Jeff I guess that means you're retiring. And he said, [n]o, that doesn't mean that. Could you fire me so that I can collect Unemployment? Which, as he stated yesterday in his deposition, he wanted me to fire him so he could collect Unemployment, which he stated to me on the phone, and he acknowledged yesterday in his very own deposition. And I said, Jeff, I'm going to take this as your retirement, that's not what happened. I said, [y]ou have a pension. Why would I fire you? Why would you take Unemployment? You're refusing to come to work and you have a pension. If that's what you're going with, go with your pension and enjoy your retirement.

Bauchner Decl., Ex. F at 25:1-26:6. This exchange was confirmed by Plaintiff's own testimony: "I am not going to retire. You'd have to fire me, then I will collect unemployment." Bauchner Decl., Ex. A at 132:12-18.

Plaintiff also held his doctor's note for more than two weeks "as a back up" before providing it to Solil; although he inconsistently testified that he did not believe he would need the note relying instead on Solil's consistent extension of "good faith" towards him over 20 years. Compare Bauchner Decl., Ex. A at 120:3-14 with 118:3-11.

Plaintiff's admitted desire to get fired, collect unemployment, and commence this suit is further confirmed by his true interest: to get paid to sit at home and not work.[5] Indeed, Plaintiff

---

[5] Notwithstanding 20 years of lucrative employment, a full pension, and having his daughters' college education paid for by Ms. Goldman, Plaintiff apparently was unhappy in his job and eager to leave. Bauchner Decl., Ex. D at P0341 ("Place sucks. With the wisdom of youth you were avoided that nightmare."); P0367 ("Between you and me, I don't give a good goddamn about any of Solil's cases.").

testified that in the 20 months since his departure from Solil he made no honest effort whatsoever to secure new employment, Bauchner Decl., Ex. A at 87:19-90:1 & 92:17-21 -- preferring instead to collect the sizable pension provided by Solil and to pursue this frivolous action -- even though he is fully vaccinated and there are numerous attorney jobs available where he could have interviewed remotely and potentially asked for a work-from-home accommodation depending on the nature of the job duties. Furthermore, the last sentence of the May 28, 2020 email confirms that Plaintiff contemplated retiring -- as suggested by Ms. Goldman -- "depending on discussions with [Solil]." Certainly, this shows that Plaintiff had no real intention of continuing his legal career with Solil, or elsewhere.

Consequently, Plaintiff squarely placed his departure from Solil at issue -- claiming that he was fired after *admitting* that Ms. Goldman *refused* to fire him (which may explain why he alleged and testified that he was actually "furloughed." Compl. ¶ 45 & Bauchner Decl., Ex. A at 96:19-21 ("Q. Why do you allege that she told you she was furloughing you? A. Those were her words."). His work phone records and the May 29, 2020 email are thus indisputably relevant and their destruction constitutes spoliation.

Therefore, the only question that remains is what sanction is adequate to punish and remedy Plaintiff's intentional, bad-faith spoliation of evidence. In light of the brazen behavior of Plaintiff, which is compounded by the fact that he is an experienced attorney (and he apparently deleted relevant emails that he sent to Dr. Katz), the only appropriate sanction is dismissal of the Amended Complaint with prejudice.

Honorable Alison J. Nathan, U.S.D.J.
November 18, 2021
Page 10

## CONCLUSION

For the foregoing reasons, Defendants respectfully submit that the Court impose sanctions upon Plaintiff for his intentional spoliation of evidence in violation of Rule 37(e) and dismiss the Amended Complaint with prejudice.

Respectfully submitted,

Joshua S. Bauchner, Esq.
Rahool Patel, Esq.
Ansell Grimm & Aaron, P.C.
*Attorneys for Defendants*

Cc:   Counsel for Plaintiff (via ECF)