# AG&A | ANSELL GRIMM & AARON PC
## COUNSELORS AT LAW

365 RIFLE CAMP ROAD
WOODLAND PARK, NEW JERSEY 07424
973-247-9000
973-247-9199 (FAX)

1500 LAWRENCE AVENUE
CN7807
OCEAN, NEW JERSEY 07712
732-922-1000
732-922-6161 (FAX)

214 CARNEGIE CENTER
SUITE 112
PRINCETON, NEW JERSEY 08540
609-751-5551

140 GRAND STREET
SUITE 705
WHITE PLAINS, NEW YORK 10601
800-569-3886

41 UNIVERSITY DRIVE
SUITE 400
NEWTOWN, PENNSYLVANIA 18940
267-757-8792

www.ansellgrimm.com

RICHARD B. ANSELL ‡
PETER S. FALVO, JR.
JAMES G. AARON
PETER B. GRIMM
MITCHELL J. ANSELL
BRIAN E. ANSELL‡
ALLISON ANSELL▫†
MICHAEL V. BENEDETTO
DAVID B. ZOLOTOROFE
DONNA L. MAUL•
RICK BRODSKY
LAWRENCE H. SHAPIRO•▫
ROBERT A. HONECKER, JR. ▫§
JENNIFER S. KRIMKO
FREDERICK C. RAFFETTO~
JOSHUA S. BAUCHNER•
DAVID J. BYRNE▫
ANDREA B. WHITE •·
EDWARD J. AHEARN

JASON S. KLEIN•
MELANIE J. SCROBLE
BARRY M. CAPP•Δ
DOUGLAS A. DAVIE•
ELYSA D. BERGENFELD
RICHARD B. LINDERMAN▫
CRAIG D. GOTTILLA•▫
KEVIN M.CLARK
KRISTINE M. BERGMAN▫
JESSICA T. ZOLOTOROFE
TARA K. WALSH•
RAHOOL PATEL•
NICOLE D. MILLER▫
ALFRED M. CASO
ANTHONY J. D'ARTIGLIO•
SETH M. ROSENSTEIN•
ASHLEY V. WHITNEY•
COURTNEY E. DUNN•

COUNSEL
HON. ANTHONY J. MELLACI, JR., J.S.C. (RET)
STACEY R. PATTERSON•
JAMES A. SYLVESTER
ROY W. HIBBERD ∇Δ
HON. RAYMOND A. HAYSER, J.T.C. (RET)
KELLY M. CAREY

RETIRED
ROBERT I. ANSELL
LISA GOLDWASSER•

IN MEMORIAM
LEON ANSCHELEWITZ (1929-1986)
MAX M. BARR (1929-1993)
MILTON M. ABRAMOFF (1935-2004)
DAVID K. ANSELL† (1962-2019)

LICENSED ALSO IN:
Δ D.C. ▫ MASS. • N.Y. * WASH.
▫ PENN. ~ FLA. ∇ CALIF.

† FELLOW, AMERICAN ACADEMY OF MATRIMONIAL LAWYERS

‡ CERTIFIED BY THE SUPREME COURT OF NEW JERSEY AS A CIVIL TRIAL ATTORNEY

§ CERTIFIED BY THE SUPREME COURT OF NEW JERSEY AS A CRIMINAL TRIAL ATTORNEY

• CERTIFIED BY THE SUPREME COURT OF NEW JERSEY AS A MATRIMONIAL LAW ATTORNEY

December 13, 2021

<u>Via ECF</u>

Honorable Alison J. Nathan, U.S.D.J.
United States District Court for the
    Southern District of New York
40 Foley Square, Room 2102
New York, New York 10007

>   Re:   *Jeffrey M. Goldman v. Sol Goldman Investments LLC, et al.*
>         <u>Civil Action No.: 1:20-cv-6727</u>

Dear Judge Nathan:

This firm represents Defendants Sol Goldman Investments LLC ("SGI"), Solil Management, LLC ("Solil"), and Jane H. Goldman (collectively, "Defendants") in the above styled matter. Please accept this letter in lieu of a more formal brief in further support of Defendants' motion to sanction Plaintiff Jeffrey M. Goldman ("Plaintiff") for the intentional, bad-faith spoliation of evidence and to dismiss the Amended Complaint with prejudice, pursuant to Federal Rule of Civil Procedure 37.

086874.000058.75108802

Honorable Alison J. Nathan, U.S.D.J.
December 13, 2021
Page 2

## LEGAL ARGUMENT

First, we note that Plaintiff's opposition brief repeatedly peddles an argument that has no relevance to the substance of this Motion. Specifically, Plaintiff contends on several occasions that Defendants could have asked more questions about the May 28, 2020 email and the erasure of the contents of Plaintiff's work phone at Plaintiff's deposition or sought to depose him a second time. But this is nothing more than a red herring. Apart from the fact that Defendants were not aware of the email on August 17, 2021, when they deposed Plaintiff because the email was only disclosed on October 29, 2021, any further testimony on the email or the contents of the work phone is irrelevant to the issue at hand; namely, Plaintiff's repeated, intentional destruction of evidence.[1] As we explained in the opening brief and which all Plaintiff's excuses fail to dispute, the documentary evidence is clear: (a) the May 28, 2020 email was ***not produced*** by Plaintiff despite numerous discovery requests because he ***intentionally deleted*** it; and (b) Plaintiff also ***intentionally deleted*** the contents of his work phone after his employment with Solil ended with the intent to deprive Solil of access to those communications.

Second, Plaintiff argues that the May 28, 2020 email is not subject to Rule 37(e) because it is "not lost." This argument misses the forest for the trees. Plaintiff deleted this email despite knowing that he was contemplating litigation. Defendants only learned about the email because

---

[1] In addition, Plaintiff repeatedly claims that Defendants waived the right to depose Plaintiff a second time because a follow-up deposition was not noticed despite having two months to do so. This ignores the fact that Defendants requested a conference with Magistrate Judge Freeman on various issues in accordance with the Court's Individual Rules of Practice, Magistrate Judge Freeman held a conference, and then gave Defendants permission to file this Motion. For Plaintiff to act as if Defendants did nothing in the interim is simply untrue.

Defendants also are deposing Solil's IT manager who handled technology issues at the time Defendant quit his employment and, subject to that examination, reserve the right to further depose Plaintiff concerning his spoliation of evidence.

Honorable Alison J. Nathan, U.S.D.J.
December 13, 2021
Page 3

Dr. Katz received the email, safeguarded it, and turned it over upon Defendants' request. We will never know whether other emails suffered a similar fate. Plaintiff's deletion of the May 28, 2020 email is clear evidence of a broader pattern of conduct by him, which is particularly disturbing because an attorney with decades of experience (like Plaintiff) indisputably should know that evidence should be preserved and safeguarded, not erased.

Furthermore, Plaintiff also argues that there is no evidence to conclude that the May 28, 2020 email was intentionally deleted. This response beggars belief. Emails do not accidentally delete themselves. Individuals have to take the affirmative step of deleting an email from their inbox or another folder. Even then, an individual can restore or "un-delete" an email placed in their deleted items or trash folder with ease. Most email programs also offer further protection by leaving emails in the deleted items or trash folder for several weeks in case the account holder changes their mind and/or the option to even restore items deleted from the deleted items or trash folder.

To the extent that Plaintiff claims he was not "tech-savvy" enough to find certain emails in his initial search, this argument rings hollow. Notably, Plaintiff was "tech-savvy" enough (as detailed throughout his brief) to delete his emails and to delete the contents of his work cell phone. Moreover, Plaintiff could have asked his attorneys for relevant search terms and his friends or family members to help search his email. The fact that Plaintiff (an attorney) could not manage to find all of his own emails in one personal email account should be contrasted with the herculean efforts that Defendants and their counsel engaged in to produce discovery to Plaintiff – which ultimately took dozens of hours to review, create a privilege log, and produce.

Third, Plaintiff's argument that he deleted the contents of his work cell phone so that the next user of the device would receive a "new" phone reset to factory defaults begs credulity. Solil

never asked him to delete the contents of the work phone. Plaintiff made no attempt to reach out to Solil to ascertain whether Solil wanted him to delete the contents of the work phone. One simple telephone call or email to Solil would have addressed this question if Plaintiff actually was trying to make sure that the phone would be factory ready for the next user. Instead, Plaintiff unilaterally decided to delete the contents of the work phone destroying numerous, contemporaneous communications arising from his separation from Solil. It had nothing to do with any purported altruistic benefit for the next user of the phone.

We know this because Plaintiff admitted as much: "I erased the Solil phone & will return it those bitches." For Plaintiff to now claim – via a self-serving certification -- his intentional decision to delete the phone's contents was actually some benevolent act meant for Solil's benefit is not credible and contradicted by the very words he used in a contemporaneous email. The argument advanced by Plaintiff would strain credulity if a layperson made it – but it is simply not credible for an attorney of his two-decades of experience to offer the Court.

Furthermore, Plaintiff cannot have his cake and eat it too. He cannot – on the one hand – tell his primary care doctor and the Court that he was supposedly prescient enough to predict that his employer would fire him for making a request for an accommodation and – on the other hand – then claim that he was not contemplating litigation against that same employer several weeks later. In short, Plaintiff deleted the contents of his work cell phone with the "intent to deprive" Solil of those communications, which undoubtedly satisfies the standard set forth in *Ungar v. City of N.Y.*, 329 F.R.D. 8, 12 (E.D.N.Y. 2018).

Fourth, Plaintiff also claims that he is now trying to acquire records from Verizon with respect to the work phone (although, notably, fails to provide a copy of any subpoena to Defendants and the Court). But this misses the point completely. The phone records from Verizon will only

Honorable Alison J. Nathan, U.S.D.J.
December 13, 2021
Page 5

Honorable Alison J. Nathan, U.S.D.J.
December 13, 2021
Page 5

show the numbers he called or the numbers that called him. Those records will not show the contents of text messages or emails or documents and communications he deleted from his phone. In short, the act of deleting his work phone's contents has permanently and irrevocably destroyed countless gigabytes of data that can never be discovered. Simply put, the deleted data must have been relevant because Plaintiff would not have destroyed it in his fit of anger if the data would not have benefited or been relevant to Solil in some manner.

Finally, we note that Defendants have asked the Court to impose the ultimate sanction on Plaintiff for his spoliation of evidence. However, contrary to Plaintiff's assertion, nothing prevents the Court – in the event it agrees that spoliation has occurred but concludes that dismissal with prejudice is not the appropriate remedy – from applying a different sanction of its choice. In fact, in the *Scantibodies Lab* case cited by Plaintiff, the defendant sought to preclude all evidence of damages and the magistrate judge (and eventually the district judge) imposed a lesser motley of sanctions. *Scantibodies Lab., Inc. v. Church & Dwight Co.*, No. 14-cv-2275 (JGK), 2017 U.S. Dist. LEXIS 21223 (S.D.N.Y. Feb. 14, 2017). Plaintiff's argument simply lacks merit and Defendants are confident that sanctions are warranted, in whatever form the Court determines.

Honorable Alison J. Nathan, U.S.D.J.
December 13, 2021
Page 6

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court impose sanctions upon Plaintiff for his intentional spoliation of evidence in violation of Rule 37(e) and dismiss the Amended Complaint with prejudice.

                                        Respectfully submitted,

                                        Joshua S. Bauchner, Esq.
                                        Rahool Patel, Esq.
                                        Ansell Grimm & Aaron, P.C.
                                        *Attorneys for Defendants*

Cc:    Counsel for Plaintiff (via ECF)