**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
**JEFFREY M. GOLDMAN,**

               **Plaintiff,**

     **-v-**                                         **CASE NO.:  1:20-cv-6727 (AJN)**

**SOL GOLDMAN INVESTMENTS LLC, SOLIL**
**MANAGEMENT, LLC, and JANE H. GOLDMAN,**

               **Defendants.**

------------------------------------------------------------------------x

### PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1

      Pursuant to Local Rule 56.1, Plaintiff Jeffrey M. Goldman ("Mr. Goldman" or "Plaintiff")

respectfully submits this statement of undisputed material facts in support of Plaintiffs motion for

partial summary judgment.[1]

### Plaintiff's Employment and Job Duties

1. Plaintiff began working for Defendants as an in-house attorney in June 2000. (Kirschenbaum

    Decl., Ex. A, Jeffrey Goldman Tr. 60:6-9; Goldman Decl. ¶ 4).

2. Plaintiff's work involved advocating claims on behalf of Defendant in connection with

    Defendants' commercial and residential real estate properties throughout New York City.

    (Kirschenbaum Decl., Ex. A, Jeffrey Goldman Tr. 8:19-12:8, 42:18-44:20; Ex. C, Judith Brener

---

[1] In support of this Statement, Plaintiff cites to the following herein: (1) numbered exhibits attached to the December 20, 2021 Declaration of D. Maimon Kirschenbaum, which are hereinafter referred to as "Kirschenbaumn Decl., Ex. __;" (2) the Declaration of Jeffrey M. Goldman, which is attached herein, and which is hereinafter referred to as "Jeffrey Goldman Decl. ¶__," and (3) the Declaration of Maria Fleytas, which is attached herein, and which is hereinafter referred to as "Fleytas Decl., ¶ __." Citations to the transcript pages of individuals deposed in this case are designated by the deponent's first and last name.

Tr. 26:7-8; Goldman ¶¶ 9-18).

3. Plaintiff was supervised by Defendant Jane Goldman. (Kirschenbaum Decl., Ex. A, Jeffrey Goldman Tr. 64:14-19, Ex. C, Judith Brener Tr. 41:18-22; Goldman ¶¶ 5-7).

4. Plaintiff was also supervised by Defendants' General Counsel, Judith M. Brener. (Kirschenbaum Decl., Ex. A, Jeffrey Goldman Tr. 127:5-12, Ex. C, Judith Brener Tr. 9:11-14).

5. Plaintiff's work responsibilities included representing Defendants, primarily Defendant SGI and the hundreds of properties it owns, in a wide array of legal contexts. (Kirschenbaum Decl., Ex. C, Judith Brener Tr. 9:11-13:10; Goldman Decl. ¶¶ 9-18).

6. Plaintiff's work responsibilities included advocating for Defendants as petitioners in housing court proceedings involving nonpayment of rent, "use and occupancy" claims, and holdover proceedings in rent-regulated and free market properties. (Goldman Decl ¶¶ 9-13).

7. Plaintiff's work responsibilities included defending Defendants in proceedings commenced against them by the City of New York or individual tenants in connection with the conditions in Defendants' properties, and representing Defendants in administrative, civil, and appellate proceedings. (Goldman Decl ¶¶ 9-13).

8. Throughout Plaintiff's tenure, he recovered hundreds of apartments from tenants, which enabled Defendants to dramatically increase the rents that they collected from those properties. (Goldman Decl ¶¶ 9-18).

**Defendants Single Integrated Employer**

9. Plaintiff was an employee of Defendant Solil Management LLC ("Solil"). (Kirschenbaum Decl., Ex. C, Judith Brener Tr. 12:21-23).

10. Defendant Goldman is a principle of Solil. (Kirschenbaum Decl. Ex. B, Jane Goldman Tr. 18:15-19).

11. Defendant Goldman is the chief decision maker at Solil in the day-to-day decisions. (Kirschenbaum Decl., Ex. C. Judith Brener Tr. 17:23-18:9).

12. Defendant Goldman is a manager of Defendant Sol Goldman Investment LLC ("SGI") and is authorized to make management decisions on behalf of SGI. (Kirschenbaum Decl., Ex. C. Judith Brener Tr. 13:17-16:5).

13. SGI and Solil operate out of the same office at 1185 Sixth Avenue, 10th Floor, New York, New York 10036-2604. (Kirschenbaum Decl., Ex. L, Ex. N; Goldman ¶ 8).

14. The bulk of Plaintiff's work comprised of representing Defendant SGI's properties in court. (Kirschenbaum Decl., Ex. C, Judith Brener Tr. 12:24-13:12, Ex. Q).

15.  Each of these properties is owned by Defendant SGI and is set up as an individual limited liability company. (Kirschenbaum Decl., Ex. A, Jeffrey Goldman, Tr. 43:24-46:2, Ex. C, Judith Brener Tr. 9:3-10:6, Ex. Q).

16. Defendants did not have a formal retainer agreement under which Plaintiff represented SGI or any of the other companies that SGI owned, and which Plaintiff represented. (Goldman ¶ 16).

17. Defendant Goldman and her family own hundreds of related companies. (Kirschenbaum Decl., Ex. A, Jeffrey Goldman, Tr. 43:24-46:2, Ex. B, Jane Goldman Tr. 19:18-20:19, Goldman ¶¶ 9-18, 22).

18. Defendant SGI asserts financial control over the various properties. (Kirschenbaum Decl., Ex. C, Judith Brener, Tr. 9:3-10:6, Ex. P; Goldman ¶¶ 8-22).

19. Defendant Solil does not generate any revenue on its own. (Goldman ¶ 19).

20. Defendant Solil handled payroll for SGI's employees and each of Defendant SGI's subsidiaries' employees. (Goldman ¶¶ 19-21).

21. Regardless of the entity Plaintiff represented in any given case, Defendant Goldman, controlled

decision-making for the case on every level. (Kirschenbaum Decl., Ex. R; Goldman ¶¶ 13-18).

22. Defendant Goldman had the sole authority to settle any case that Plaintiff worked on and involved any of the various properties owned by Defendant SGI. (Kirschenbaum Decl., Ex. A, Jeffrey Goldman Tr. 64:14-65:25).

23. Even Ms. Brener, Defendants' General Counsel, could not make final decisions on matters that Plaintiff worked on, and would instruct Plaintiff to seek Defendant Goldman's approval. (Kirschenbaum Decl., Ex. R; Goldman Decl. ¶ 14).

24. Ms. Judith Brener was the general counsel for Defendant SGI, Defendant Solil, and "various holding companies and other entities." (Kirschenbaum Decl., Ex. C, Judith Brener Tr. 9:3-17).

25. Defendant Goldman had the power to hire and fire employees of Defendant SGI. (Kirschenbaum Decl., Ex. C. Judith Brener Tr. 13:17-16:5).

26. Defendant Goldman had the power to hire and fire employees of Defendant Solil. (Kirschenbaum Decl., Ex. C. Judith Brener Tr. 17:23-18:9; 41:18-22; Goldman Decl. ¶ 7; Fleytas Decl. ¶¶ 13-18).

27. Defendant Goldman had the power to set the rate of pay for employees of Defendant SGI. (Kirschenbaum Decl., Ex. C. Judith Brener Tr. 13:17-16:5).

28. Defendant Goldman had the power set the rate of pay for employees of Defendant Solil. (Kirschenbaum Decl., Ex. C. Judith Brener Tr. 17:23-18:9; 41:18-22; Goldman Decl. ¶¶ 5-6).

29. Defendant Goldman had the power to set the terms and conditions of employment for employees of Defendant SGI. (Kirschenbaum Decl., Ex. C. Judith Brener Tr. 13:17-16:5).

30. Defendant Goldman had the power to set the terms and conditions of employment for employees of Defendant Solil. (Kirschenbaum Decl., C, Judith Brener Tr. 41:18-22, Ex. K Goldman Decl. ¶¶ 5-7, 14-15, 18); Fleytas Decl. ¶¶ 13-18).

4

31. Defendant Goldman had authority over, and made decisions pertaining to, Plaintiff's salary and compensation. (Kirschenbaum Decl., Ex. B, Jane Goldman Tr. 43:11-13, Ex. K; Goldman Decl. ¶¶ 5-7, 14-15, 18).

32. Defendant Goldman set the terms and conditions of Plaintiff's employment. (Kirschenbaum Decl., Ex. B, Jane Goldman Tr. 43:11-13, Ex. K; Goldman Decl. ¶¶ 5-7, 14-15, 18).

**Covid-19 and Plaintiff's Work From Home**

33. Beginning on March 17, 2020, because of the onset of the Covid-19 pandemic, Defendants instructed Plaintiff, and the rest of Defendants' legal staff, to work from home. (Kirschenbaum Decl., Ex. G, Fleytas Decl. ¶¶ 6-8; Goldman ¶ 23).

34. Defendants provided Plaintiff with a computer for him to use while working from home. (Fleytas Decl. ¶¶ 6-8; Goldman ¶ 24).

35. From March 17, 2020 through June 24, 2020, Plaintiff worked from his own office in New Jersey. (Fleytas Decl. ¶¶ 6-8, 19-22; Goldman ¶ 25).

36. When working from home, Plaintiff completed his work. (Kirschenbaum Decl., Ex. M; Fleytas Decl. ¶¶ 6-8, 19-22; Goldman ¶¶ 25-34).

37. When working from home, Plaintiff continued to provide excellent and competent legal services to Defendants. (Kirschenbaum Decl., Ex. M; Goldman ¶¶ 25-34).

38. When working from home, Defendants did not complain about the quality of Mr. Goldman's work. (Goldman ¶¶ 32-33).

39. While working from home, Plaintiff drafted many agreements between Defendants and tenants. (Kirschenbaum Decl., Ex. M, Goldman ¶¶ 28-29).

40. While working from home Plaintiff worked on at least 15 different cases, in an effort to resolve them. (Kirschenbaum Decl., Ex. M; Goldman ¶ 29).

41. From March 17, 2020 through June 17, 2020, Defendants did not complain that Plaintiff was working from home. (Goldman ¶¶ 32-33).

42. From March 17, 2020 through June 17, 2020, Defendants did not indicate that Plaintiff could not perform his job duties from his home office. (Goldman ¶¶ 32-33).

43. From March 17, 2020 through June 24, 2020, the New York State Courts did not hold in-person hearings. (Kirschenbaum Decl., Ex. B, Jane Goldman Tr. 35:21-25; Goldman ¶¶ 26, 31, 34).

44. During the time period of March 17, 2020 through June 24, 2020, as part of his work for Defendants, Plaintiff attended virtual hearings in front of the New York State Courts. (Goldman ¶¶ 26, 31, 34).

45. As of June 24, 2020, there were no in person court of appearances scheduled for Plaintiff to attend on behalf of Defendants. (Kirschenbaum Decl., Ex. B, Jane Goldman Tr. 35:21-25, Ex. C, Judith Brener Tr. 28:6-29:9; Goldman ¶ 31).

46. As of June 24, 2020, there were no specific in-person hearings or events that Defendants were concerned about or specifically wanted Plaintiff to attend. (Kirschenbaum Decl., Ex. B, Jane Goldman Tr. 35:21-25, Ex. C, Judith Brener Tr. 28:6-29:9; Goldman ¶ 31).

**Plaintiff's Disability and Covid-19**

47. In June 2020, Plaintiff was 69 years old.  (Goldman Decl., ¶ 3).

48. Plaintiff suffers from high blood pressure, also known as hypertension. (Kirschenbaum Decl., Ex. D; Doron Katz Tr. 8:12-22, 9:8-21).

49. Plaintiff is overweight. (Kirschenbaum Decl., Ex. D; Doron Katz Tr. 10:3-24)

50. Plaintiff has a high body mass index (BMI). (Kirschenbaum Decl., Ex. D; Doron Katz Tr. 8:19-9:11; 10:3-24).

51. Plaintiff's BMI is close to the level that is considered obese in the United States. (Kirschenbaum Decl., Ex. D; Doron Katz Tr. 8:19-9:11; 10:3-24).

52. Plaintiff has coronary artery disease. (Kirschenbaum Decl., Ex. D; Doron Katz Tr. 28:11-29:2).

53. Plaintiff is more susceptible to getting sick and dying from Covid-19 because of his hypertension. (Kirschenbaum Decl., Ex. D; Doron Katz Tr. 8:2-22, 9:8-21).

54. Plaintiff is more susceptible to getting sick and dying from Covid-19 because of his overweight body and high BMI. (Kirschenbaum Decl., Ex. D; Doron Katz Tr. 8:2-9:21, 10:3-24, 28:20-29:2).

55. Plaintiff is more susceptible to getting sick and dying from Covid-19 because of his coronary artery disease. (Kirschenbaum Decl., Ex. D; Doron Katz Tr. 28:11-29:2).

56. Plaintiff is more susceptible to getting sick and dying from Covid-19 because of his age. (Kirschenbaum Decl., Ex. D; Doron Katz Tr. 8:2-9:21, 10:3-24, 28:20-29:2)

57. From March 2020 through the late spring of 2021, Plaintiff primarily remained in his house and significantly reduced his contact with individuals outside his household. (Kirschenbaum Decl., Ex. A, Jeffrey Goldman Tr. 34:5-36:10, Goldman Decl. ¶ 36).

58. From March 2020 through the late spring of 2021, Plaintiff stopped going to grocery stores, stopped worshipping at his synagogue, and stopped having in-person visits with his two daughters. Kirschenbaum Decl., Ex. A, Jeffrey Goldman Tr. 34:5-36:10, Goldman Decl. ¶ 35).

59. In the spring of 2021, Plaintiff was fully vaccinated with the covid-19 vaccine. (Kirschenbaum Decl., Ex. A, Jeffrey Goldman Tr. 23:7-24:8, Goldman Decl. ¶ 37).

60. After being vaccinated, Plaintiff still maintained a cautious lifestyle, but he left the house

more, saw family more, and exercised outside more than he did before getting vaccinated.

(Kirschenbaum Decl., Ex. A, Jeffrey Goldman Tr. 32:21-33-9, Goldman Decl. ¶ 38).

### Plaintiff's Accommodation Request

61. Defendants created a policy to have all of their employees return to in-person work at their Manhattan offices on June 22, 2020. (Kirschenbaum Decl., Ex. H).

62. On June 17, 2020, Plaintiff sent Judith Brener and Concetta Ferrari an email requesting that he be allowed to work from home. (Kirschenbaum Decl., Ex. E).

63. Concetta Ferrari was Defendants' office manager. (Kirschenbaum Decl., Jane Goldman Tr. 43:14-15)

64. In this June 17, 2020 email, Plaintiff requested to be allowed to work from home because he had "underlying health issues." (Kirschenbaum Decl., Ex. E).

65. Within a few hours, Judith Brener responded to Plaintiff's June 17, 2020 email via email, stating: "You are our court attorney!!!! Help!" (Kirschenbaum Decl., Ex. E).

66. Later, on June 17, 2020, Judith Brener emailed Plaintiff and requested that he send her a doctor's note to support his request. (Kirschenbaum Decl., Ex. O).

67. Shortly thereafter, Plaintiff emailed Judith Brener a letter from his physician Dr. Doron Katz. (Kirschenbaum Decl., Ex. C, Brener Tr. 34:8-13).

68. The June 3, 2020 letter from Dr. Doron Katz that Ms. Brener received from Plaintiff stated that it was Dr. Katz's medical opinion that Plaintiff suffered from several underlying conditions that, because of the covid-19 pandemic, would put him at higher risk to work in an office building in New York City. (Kirschenbaum Decl., Ex. F).

69. The June 3, 2020 letter from Dr. Doron Katz that Ms. Brener received from Plaintiff stated that it was Dr. Katz's opinion that Plaintiff is fully able to continue working from home.

(Kirschenbaum Decl., Ex. F).

70. The June 3, 2020 letter from Dr. Doron Katz that Ms. Brener received from Plaintiff accurately reflects Dr. Doron Katz's professional and medical opinion at that time. (Kirschenbaum Decl., Ex. D; Doron Katz Tr. 55:24-56:10).

71. Judith Brener did not engage in a cooperative dialogue with Plaintiff regarding Plaintiff's request to work from home. (Kirschenbaum Decl., Ex. A, Jeffrey Goldman Tr. 141:14-7, Ex. C., Judith Brener Tr. 42:3-6, 44:20-46:14).

72. Other than the June 17, 2020 emails correspondence identified above, Defendants did not create any other records related to Plaintiff's request to work from home. (Kirschenbaum Decl., C., Judith Brener Tr. 44:20-46:14).

73. On June 22, 23, and 24, 2020, Plaintiff worked for Defendants from his home. (Kirschenbaum Decl., Ex. A, Jeffrey Goldman Tr. 131:5-17).

74. Defendant Goldman was unaware that Plaintiff worked from home on June 22, 23, and 24, 2020. (Kirschenbaum Decl., Ex. B, Jane Godldman Tr. 27:15-23).

**Plaintiff's Termination**

75. On June 24, 2020, Judith Brener spoke with Defendant Goldman and gave Defendant Goldman a copy of Plaintiff's June 17, 2020 email. (Kirschenbaum Decl., Ex. B, Jane Goldman Tr. 27:24-34:25).

76. After viewing Plaintiff's June 17, 2020 email on June 24, 2020, Defendant Goldman called Plaintiff on the phone. (Kirschenbaum Decl., Ex. B, Jane Goldman Tr. 27:24-34:25).

77. During the June 24, 2020 phone call, Defendant Goldman told Plaintiff that it was unacceptable for him to work from home. (Kirschenbaum Decl., Ex. B, Jane Goldman Tr. 35:21-36:13).

78. During the June 24, 2020 phone call, Defendant Goldman told Plaintiff to retire. (Kirschenbaum Decl., Ex. A, Jeffrey Goldman Tr. 131:18-132:25, Ex. B, Jane Goldman Tr. 24:11-26:23).

79. During the June 24, 2020 phone call, Plaintiff told Defendant Goldman that he was not retiring or quitting his employment. (Kirschenbaum Decl., Ex. A, Jeffrey Goldman Tr. 131:18-132:25, Ex. B, Jane Goldman Tr. 24:11-26:23).

80. Then, during the June 24, 2020 phone call, Plaintiff told Defendant Goldman to fire him instead and he would collect unemployment insurance. (Kirschenbaum Decl., Ex. A, Jeffrey Goldman Tr. 131:18-132:25, Ex. B, Jane Goldman Tr. 24:11-26:23).

81. In response, during the June 24, 2020 phone call, Defendant Goldman told Plaintiff that she was going to "take [Plaintiff's stated position] as [Plaintiff's] retirement." (Kirschenbaum Decl., Ex. B, Jane Goldman Tr. 24:11-26:23).

82. During the June 24, 2020 phone call, Defendant Goldman told Plaintiff that if he did not come to work in the office then he could "go with [his] pension and enjoy [his] retirement." (Kirschenbaum Decl., Ex. B, Jane Goldman Tr. 24:11-26:23).

83. During the June 24, 2020 phone call, Defendant Goldman did not discuss whether Plaintiff could complete his job duties while working from home. (Kirschenbaum Decl., Ex. A, Jeffrey Goldman Tr. 131:18-132:25. Ex. B, Jane Goldman Tr. 38:24-39:1; Ex. I, Judith Brener Tr. 13:10-14:10).

84. During the June 24, 2020 phone call, Defendant Goldman did not discuss Plaintiff's underlying disabilities. (Kirschenbaum Decl., Ex. A, Jeffrey Goldman Tr. 131:18-132:25, Ex. B, Jane Goldman Tr. 38:24-39:1).

85. During the June 24, 2020 phone call, Defendant Goldman did not discuss how Plaintiff's

underlying disabilities interacted with his ability to complete his job duties. (Kirschenbaum

Decl., Ex. A, Jeffrey Goldman Tr. 131:18-132:25, Ex. B, Jane Goldman Tr. 38:24-39:1).

86. During the June 24, 2020 phone call, Defendant Goldman did not discuss whether there were

other accommodations that Defendants could provide to Plaintiff that would allow him to

complete his work and would not create problems or an undue hardship for Defendants.

(Kirschenbaum Decl., Ex. A, Jeffrey Goldman Tr. 131:18-132:25, Ex. B, Jane Goldman Tr.

38:24-39:1, Ex. I, Judith Brener Tr. 13:10-14:10).

87. Defendant Goldman did not engage with Plaintiff in the interactive process to discuss the

potential for Plaintiff to be accommodated.  (Kirschenbaum Decl., Ex. A, Jeffrey Goldman Tr.

131:18-132:25, Ex. B, Jane Goldman Tr. 38:24-39:1, Ex. I, Judith Brener Tr. 13:10-14:10).

88. Prior to speaking with Plaintiff on June 24, 2020, Defendant Goldman believed that working

from home was not an option for Plaintiff's job and Plaintiff job could not be done from a

home office. (Kirschenbaum Decl., Ex. B, Jane Goldman Tr. 38:15-24).

89. The reason that Plaintiff's termination ended was because Defendant Goldman would not

allow Plaintiff to work remotely. (Kirschenbaum Decl., Ex. A, Jeffrey Goldman Tr. 131:18-

132:25, Ex. B, Jane Goldman Tr. 51:24-52:11).

### After Plaintiff's Employment Ended

90. Defendants have no written records of whether Plaintiff's accommodation request was

accepted or denied. (Kirschenbaum Decl., Ex. C., Judith Brener Tr. 44:20-46:14).

91. Defendants have no written records related to whether Plaintiff's accommodation request

posed an undue burden on Defendants. (Kirschenbaum Decl., Ex. C., Judith Brener Tr. 44:20-

46:14).

92. Immediately after the June 24, 2020 phone call between Plaintiff and Defendant Goldman, on

June 24, 2020, Plaintiff's access to the Defendants' network and to Plaintiff's work email and work computer was shut off. (Fleytas Decl. ¶¶ 13-18; Goldman Decl. ¶ 39).

93. Immediately after the June 24, 2020 phone call between Plaintiff and Defendant Goldman, Defendants terminated Plaintiff's health insurance benefits. (Kirschenbaum Decl., Ex. L).

94. On June 24, 2020, Maria Fleytas, Defendants' IT Director, was instructed by Concetta Ferarri to remove Plaintiff from Defendants' network system and to shutoff his access to his work email and computer because Defendant "Jane [Goldman] just fired" Plaintiff. (Fleytas Decl. ¶¶ 13-18).

95. After the June 24, 2020 phone call, Defendant Goldman spoke with Judith Brener, Defendants' general counsel. (Kirschenbaum Decl., Ex. J, Judith Brener Tr. 12:8-19).

96. During the conservation with Judith Brener, Defendant Goldman did not say that Plaintiff had retired. (Kirschenbaum Decl., Ex. J, Judith Brener Tr. 12:8-19).

97. Defendants submitted signed paperwork to the New York State Department of Labor related to Plaintiff's unemployment insurance claims. (Kirschenbaum Decl., Ex. I).

98. On this paperwork, Defendants stated that the reason for Plaintiff's unemployment was that by requesting to work from home Plaintiff "effectively resigned/retired." (Kirschenbaum Decl., Ex. I, p.3).

99. When Defendants' office reopened on or about June 22, 2020, some employees, including employees in Defendants' legal department, at various times, were permitted to continue working from home. (Fleytas Decl. ¶¶ 9-11).

100.          After June 22, 2020 Defendants allowed David Hamill, who is under 40 years old, to work from home. (Fleytas Decl. ¶¶ 9-10).

101.          After June 22, 2020 Defendants allowed Jody Calisi, who is approximately 40

years old, to work from home. (Fleytas Decl. ¶¶ 9-10).

102.     After June 22, 2020 Defendants allowed Reena Malhotra, who is approximately 45 years old, to work from home. (Fleytas Decl. ¶¶ 9-10).

103.     After June 22, 2020 Defendants allowed Lauren Liebel, who is approximately 32 years old, to work from home. (Fleytas Decl. ¶¶ 9-10).

104.     After June 22, 2020 Defendants allowed Darlene Young, an employee, who is in her late 50's, to work from home. (Fleytas Decl. ¶¶ 9-10).

105.     After the office reopened in June 2020, a number of employees who worked in Defendants' offices, contracted Covid-19, including employees who worked in and near the legal department, including Estralda Tudor-Davis, Carolyn Alana, Listra Harris, Elvio [last name unknown], and Maria Fleytas. (Fleytas Decl. ¶ 12).

Dated:   New York, New York
         December 20, 2021

JOSEPH & KIRSCHENBAUM LLP

By:     __/s/ D. Maimon Kirschenbaum___

        D. Maimon Kirschenbaum
        32 Broadway, Suite 601
        New York, New York 10022
        (212) 688-5640
        *Attorneys for Plaintiff*