**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------x
**JEFFREY M. GOLDMAN,**

        **Plaintiff,**

    **-v-**                               **CASE NO.:  1:20-cv-6727 (AJN)**

**SOL GOLDMAN INVESTMENTS LLC, SOLIL**
**MANAGEMENT, LLC, and JANE H. GOLDMAN,**

        **Defendants.**

-------------------------------------------------------------------------x


---

### PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

---

**JOSEPH & KIRSCHENBAUM LLP**

D. Maimon Kirschenbaum
Michael DiGiulio
32 Broadway, Suite 601
New York, NY 10004
Tel: (212) 688-5640


*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT............................................................................................................................ 2

    I.    DEFENDANTS' COUNTER STATEMENT OF MATERIAL FACTS

           CONTAINS UNSUPPORTED ASSERTIONS, ARGUMENTS,

           AND LEGAL CONCLUSIONS ........................................................................ 2

    II.    PLAINTIFF REQUESTED AN ACCOMODATION .................................................... 5

    III.    DEFENDANTS REFUSED TO ENGAGE IN A COOPERATIVE

           DIALOUGE ....................................................................................................... 7

    IV.    PLAINTIFF'S REQUEST FOR AN ACCOMODATION WAS

           THE CAUSE OF HIS TERMINATION ......................................................... 9

    V.    DEFENDANTS WOULD NOT HAVE BEEN UNDULY

           BURDENED BY ALLOWING PLAINTIFF TO WORK

           FROM HOME ................................................................................................. 11

    VI.    DEFENDANTS SGI AND SOLIL ARE A SINGLE EMPLOYER ............................ 14

CONCLUSION....................................................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Agerbrink v. Model Serv. LLC*, No. 14 CV 7841,
2017 U.S. Dist. LEXIS 33249 (S.D.N.Y. Mar. 8, 2017) .....................................16

*Anderson v. City of New York*, Case No. 16-cv-1051,
2017 U.S. Dist. LEXIS 8358 at (S.D.N.Y. July 19, 2017) .................................5,6

*Arculeo v. On-Site Sales & Marketing, L.L.C.*, 425 F.3d 193 (2d Cir. 2005).......................15,17

*Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 135 (2d Cir. 2008) ...............................5

*Bridgeforth v. City of New York*, No. 16 CV 273,
2018 U.S. Dist. LEXIS 108315 (S.D.N.Y. June 28, 2018)....................................4

*Burhans v. State*, No. 152906/14,
2015 N.Y. Misc. LEXIS 9641 (Sup. Ct. Jan. 7, 2015) .........................................18

*Clinton's Ditch Cooperative Co. v. NLRB*, 788 F.2d 132 (2d Cir. 1985)............................17

*Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62 (2d Cir. 2001) ...............................3

*Glaser v. Gap Inc.*, 994 F. Supp. 2d 569 (S.D.N.Y. 2014)...................................6

*Goldstick v. The Hartford, Inc.*, Case No. 00-cv-8577,
2002 U.S. Dist. LEXIS 15247(S.D.N.Y. Aug. 19, 2002).....................................2

*Gonzalez v. Hanover Ventures Marketplace LLC*, Case No. 21-cv-1347,
2022 U.S. Dist. LEXIS 11473 (S.D.N.Y. Jan. 21, 2022)......................................15

*Hart v. Rick's Cabaret, Int'l, Inc.*, 967 F. Supp. 2d 901 (S.D.N.Y. 2013) ...........................15,16

*Hosking v. Memorial Sloan-Kettering Cancer Ctr.*, 126 N.Y.S. 3d 98
(1st App. Dept. 2020)..........................................................................8,11,13

*Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363 (S.D.N.Y. 2014) ...........................15

*Leevson v. Aqualife USA, Inc.*, No. 14-cv-6905,
2017 U.S. Dist. LEXIS 163037 (E.D.N.Y. Sept. 28, 2017).................................16

*Mack v. United States* 814 F.2d 120 (2d. Cir. 1987) .........................................12

*Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290 (2d Cir. 2008) ..............3

*Omnipoint Commc'ns, Inc. v. City of White Plains*,
175 F. Supp. 2d 700 (S.D.N.Y. 2001) ..................................................................................2,3,12

*Ramirez v. Temin & Co.,* Case No. 20-cv-6258,
2021 U.S. Dist. LEXIS 183760 (S.D.N.Y. Sept. 24, 2021)..................................................7,11

*Rodriguez v. Schneider*, No. 95 Civ. 4083,
1999 U.S. Dist. LEXIS 9741 (S.D.N.Y. June 29, 1999).......................................................4,13,14

*Tesher v. Sol Goldman Invs., LLC*, Case No. 115878/06,
2011 N.Y. Misc. LEXIS 2664 (Supr. Ct. N.Y., June 3, 2011) .............................................14

*Zuccarini v. PVH Corp.*, No. 151755/15,
2016 N.Y. Misc. LEXIS 673 (Sup. Ct. N.Y. County Feb. 29, 2016) ....................................14

## PRELIMINARY STATEMENT[1]

It is undisputed that Plaintiff is 70 years old with underlying health conditions that make him extremely vulnerable to Covid-19. The events in this case occurred in June 2020, at the height of the pandemic, before any vaccines were available, when the courts were still closed and when everyone who could was working from home. In this context, Defendants' treatment of Plaintiff was simply unconscionable and clearly illegal.

While granting summary judgment in favor of a plaintiff is uncommon, this is a rare case where it is plainly justified. Despite a robust record, Defendants cannot point to any relevant evidence to dispute the material facts necessary to grant summary judgment. Instead, Defendants rely on outlandish factual claims: that Plaintiff did not request to work from home, that Defendants were not aware that Plaintiff had a medical condition, and that Defendant Goldman's refusal to allow Plaintiff to work from home did not end Plaintiff's employment. This is as laughable as it is brazen. In the face of the clear and uncontested evidence to the contrary, Defendants maintain these extreme and unsupportable factual positions because their backs are against the wall. Defendants go one step further and unwittingly demonstrate Plaintiff's claim for him. They *continue* to insist, without having conducted any cooperative dialogue with him, that to the extent Plaintiff could only work from home, there was no place for him in the company. Once the Court finds that Plaintiff put Defendants on notice of his disability and requested an accommodation, Defendants' subsequent actions are undisputedly illegal and summary judgment is warranted.

---

[1] Because Plaintiff submits this brief as a combined reply brief in support of Plaintiff's Partial Motion for Summary Judgment (Dkt. No. 95) and opposition brief in response to Defendants' Cross Motion for Partial Summary Judgment (Dkt. No. 104), Plaintiff respectfully followed this Court's Local Rule III.B with respect to page limits and applied the 25-page page limit for opposition briefs to this submission.

# ARGUMENT

## I. DEFENDANTS' COUNTER STATEMENT OF MATERIAL FACTS CONTAINS UNSUPPORTED ASSERTIONS, ARGUMENTS, AND LEGAL CONCLUSIONS

As an initial matter, Defendants' Counterstatement of Material Facts ("CMF") (Dkt. 105-1) contains many (1) disputes of Plaintiff's factual assertions that are not properly supported by citation to relevant and admissible evidence and (2) statements that are arguments or conclusions rather than factual assertions. This Court should disregard all such statements, which are identified below and in Plaintiff's Objections and Responses to Defendants' Statement of Additional Material Facts ("RMF"), submitted here with.[2]

Local Rule 56.1 requires the responding party to specifically dispute the material facts set forth in an opposing party's statement with citations to evidence that would be admissible at trial. Local Rule 56.1(b)-(d). The purpose of this rule is "to supply the Courts with an accurate factual record" and "to prohibit parties from taking…misleading and unfair 'shortcuts' (i.e., unsupported denials)." *Omnipoint Commc'ns, Inc. v. City of White Plains*, 175 F. Supp. 2d 697, 700 (S.D.N.Y. 2001). A response pursuant to Local Rule 56.1(b)-(d) should not contain argument or narrative in an effort to "spin" the impact of the admissions a party is required to make. *Goldstick v. The Hartford, Inc.*, Case No. 00-cv-8577, 2002 U.S. Dist. LEXIS 15247, at *3 (S.D.N.Y. Aug. 19, 2002).

Rather than adhering to these requirements, Defendants frequently purport to "dispute" a fact, but then state allegations that are consistent with the asserted fact, relate to an entirely different subject matter, or constitute legal argument in an effort to "spin" the admissions that

---

[2] In their response to Plaintiff's 56.1 statement of material facts, Defendants included 78 "additional material facts". While Defendants do not characterize these "additional facts" as "undisputed," because Defendants cross-moved for summary judgment, Plaintiff has responded to these additional facts in the RMF as if they were presented as "undisputed" facts.

Defendants are compelled to make. For example, in response to Plaintiff's straightforward and innocuous factual allegation that "Plaintiff's work responsibilities included representing Defendants, primarily Defendant SGI and the hundreds of properties it owns, in a wide array of legal contexts," Defendants respond by stating that they "do not dispute that Plaintiff performed work on behalf of Solil and other entities, but Defendants do dispute that Plaintiff was employed by SGI and further dispute that Plaintiff's representation extended to Defendant Jane Goldman in a personal capacity." CMF ¶ 5. In support of their objection, Defendants cite to a declaration that simply states Defendant SGI does not employ any employees. CMF ¶ 5. This response does not address Plaintiff's assertion, is not supported by relevant evidence, and does not create a legitimate dispute of fact. This example is representative of the approach Defendants have taken throughout their response to Plaintiff's 56.1 statement. It is clear that Defendants do not like what the facts are in this case, but Defendants cannot avoid them with their unsupportive and argumentative denials.

Such responses do not create a material dispute and merely serve to obfuscate the fact that there are no disputes as to the material facts in this litigation. As such, Courts are free to disregard such denials. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001) ("Where, as here, the record does not support the assertions in a Local Rule 56.1 statement, those assertion should be disregarded, and the record reviewed independently"); *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 314 (2d Cir. 2008); *Omnipoint Commc'ns, Inc.*, 175 F. Supp. at 700. The Court should disregard these immaterial purported disputes and adopt the facts set forth in the below referenced paragraphs as undisputed for purposes of this motion.[3]

---

[3] The Court should accept the following facts, or the uncontested aspects of these facts, as undisputed because Defendants' objections are not supported by relevant or admissible evidence and/or the evidence cited does not contradict the alleged material fact: CMF ¶¶ 5, 6, 7, 8, 14, 16, 17, 20, 21, 25, 27, 29, 35, 36, 37, 38, 39, 40, 41, 42, 48,

Further, Defendants submitted 78 additional facts in support of their opposition and cross-motion for summary judgment.[4] *See* CMF at p. 24-36 ("SAMF"). Many of these additional facts are either paragraph long arguments, legal conclusions, or are simply not supported by the record citations. This is wholly inappropriate. *See Rodriguez v. Schneider*, No. 95 Civ. 4083, 1999 U.S. Dist. LEXIS 9741, at *4 n.3 (S.D.N.Y. June 29, 1999) ("Rule 56.1 statements are not argument. They should contain factual assertions, with citation to the record. They should not contain conclusions, and they should be neither the source nor result of 'cut-and-paste' efforts with the memorandum of law."). By way of example, the SAMF is replete with arguments, insinuations, and flat-out conclusions, that Plaintiff fabricated his medical condition, refused to engage in the interactive process, and plotted to get himself fired so he could collect unemployment insurance. *E.g.*, SAMF ¶¶ 15, 21, 37. These are all improper attempts to make arguments in the SAMF and to cast doubt on issues that are not in dispute or to highlight issues that are not material. But, per this example, Defendants cannot dispute that Plaintiff actually suffered from underlying health conditions, that Defendants did not talk to him about other reasonable accommodations, or that Plaintiff refused to resign when pressured by Defendant Goldman. *See* CMF ¶¶ 47-56, 83-86, 78-79. Instead, they improperly rely on unsupported insinuations and speculation about Plaintiff's motives in an attempt to confuse the straightforward issues in this case. As such, the Court should disregard all the unsupported factual assertions, arguments, and legal conclusions as identified in the RMF.[5] *E.g.*, *Bridgeforth v. City of New York*, No. 16 CV 273, 2018 U.S. Dist. LEXIS 108315, at *10; (S.D.N.Y. June 28, 2018).

---

49, 50, 51, 52, 53, 54, 55, 56, 61, 62, 64, 68, 69, 70, 71, 72, 73, 77, 78, 79, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 94, 98, 100, 102, 103, 104, 105.

[4] While Defendants do not characterize these "additional facts" as "undisputed," because Defendants cross-moved for summary judgment, Plaintiff has responded to these additional facts in the RMF as if they were presented as "undisputed" facts.

[5] Further, many of these additional facts are statements about the testimony of certain witnesses (e.g., "Dr. Katz testified…" SAMF ¶42). To the extent that Plaintiff admits that these additional facts are true, Plaintiff does so with

## II.     PLAINTIFF REQUESTED AN ACCOMMODATION

Defendants' insistence that Plaintiff did not request an accommodation is so absurd that it's hard to understand. Defendants do not dispute that on June 17, 2020, Plaintiff sent an email to Judy Brener, the Corporate Defendants' General Counsel, that stated: "I have a number of underlying health issues…I have consulted with my physician. He has provided me a letter. I will not be able to return to court, and I will not be able to return to the office. I can, however, continue working from home." Kirschenbaum Decl., Ex. E. (Dkt. No. 98-5). This email speaks for itself and is straightforward and clear – Plaintiff notified Defendants that he has medical conditions that require him to work from home. This is a quintessential request for an accommodation.

Nevertheless, Defendants take the position that this email was not a "request" for an accommodation because it did not "request" anything. Defendants' Memorandum of Law at 14-15 ("DMOL") (Dkt. No. 105). Defendants are mistaken. Plaintiff did not need to use specific language, to refer to an "accommodation" or the NYCHRL, or to explicitly seek permission in order for this communication to suffice under the law. *See Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008) (explaining that the "notice [of a request for an accommodation] is rooted in common sense"). Moreover, it's clear that Defendants actually understood this email to be a request for an accommodation – Defendants admit that Ms. Brener responded to Plaintiff's email by asking that Plaintiff provide her with a doctor's note, which he did immediately. CMF ¶¶ 67-68. The doctor's note stated clearly that Plaintiff suffered from underlying health conditions and could not work in the office but could work from home. Kirschenbaum Decl., Ex. F (Dkt. No. 98-6).

---

the understanding that Plaintiff admits that the witness testified as such but does not admit to the truth as to the witness's testimony.

As explained above, Defendants were actually aware that Plaintiff had a disability and was requesting an accommodation. But even if they were not, Defendants cannot reasonably argue that they were not *put on notice* that Plaintiff had a disability, despite their protestations that his disabilities were not "visible." *See Anderson v. City of New York*, Case No. 16-cv-1051, 2017 U.S. Dist. LEXIS 8358 at *55 (S.D.N.Y. July 19, 2017). "An employer need not know the exact diagnosis to be liable for discrimination on the basis of a disability; liability may be premised on the employer's perception, regardless of whether it is accurate, if the employer relies on such perception to engage in a prohibited act." *Glaser v. Gap Inc.*, 994 F. Supp. 2d 569, 578 (S.D.N.Y. 2014). They were in possession of a doctor's note that stated Plaintiff needed to work from home because of a disability and Plaintiff's employment ended because he needed to work from home. As such, they clearly perceived Plaintiff as having a disability that required him to work from home. It was the very reason that Plaintiff's employment ended.

Defendants' arguments on this issue are muddled. But to the extent that they are disputing the veracity of the doctor's note, the time to follow up and request more information about Plaintiff's disability would have been at the time Plaintiff made the request, not during litigation. But again, Defendants took zero steps to try to learn more about Plaintiff's disabilities at the time he made his request.[6] Regardless, they don't actually dispute that Plaintiff suffers from these disabilities. CMF ¶¶ 47-56, 69-72. In sum, the truth is that Plaintiff was disabled, and Defendants were aware and on notice of his disability and need for an accommodation. In the alternative, and to the extent Defendants argue otherwise, Defendants clearly perceived that Plaintiff had a disability that required him to work from home. There are no other reasonable alternatives to the

---

[6] This further shows how Defendants utterly failed to engage Plaintiff in the cooperative dialogue, the purpose of which is to discuss an employee's disability to see what reasonable accommodation could work for them. Defendants' contention that they were not aware of his specific disabilities just highlights their failure as an employer to engage Plaintiff in the required information sharing process and dialogue.

undisputed facts in the record and under either scenario Defendants have the requisite knowledge to be found liable under the NYCHRL.

Defendants' arguments that they were not aware of Plaintiff's request or were not put on notice of Plaintiff's disability – and thus were not under an obligation to engage with Plaintiff in an interactive dialogue and provide a reasonable accommodation – is completely unbelievable and not supported by any evidence.[7] No rational jury could agree with them. That Defendants are even making this frivolous argument at this stage of the case shows how desperate they are to avoid the legal obligations that are triggered once an employee makes an accommodation request.

### III. DEFENDANTS REFUSED TO ENGAGE IN A COOPERATIVE DIALOUGE

Defendants' contention that it was Plaintiff (and not Defendants) that failed to engage in the required cooperative dialogue is premised on ignoring the correct legal standard and misrepresenting the undisputed facts in the record. The law is straightforward: Defendants had the burden and responsibility to engage Plaintiff in a cooperative dialogue. *Anderson*, 2017 U.S. Dist. LEXIS 8358 at *55 ("An employer is required to engage in an interactive process upon notice of the need for accommodation."). Defendants fail to dispute that Defendants made no attempt to engage in the cooperative dialogue prior to Defendant Goldman calling Plaintiff on June 17, 2020. CMF ¶¶ 71-72, 75-76. And Defendants failed to dispute that during this call Defendant Goldman did not discuss or even attempt to discuss *any* of the issues required to be covered during the cooperative dialogue process. CMF ¶¶ 82-88. It was their duty to initiate this process, and they failed to do it, unequivocally.

---

[7] Despite Defendant Goldman's insistence that Plaintiff didn't ask her for an accommodation, DMOL at 15, the undisputed documentary evidence is clear that he did notify his supervisor Judy Brener, that he did so in writing, and that this writing was provided to Defendant Goldman before she spoke with Plaintiff on the phone. CMF ¶¶ 75-76. Importantly, Defendant Goldman admits that she was given Plaintiff's email and read it herself. *Id.* There is no doubt that she was aware of Plaintiff's request. Thus, Defendant Goldman's testimony that Plaintiff did not ask *her* directly does not create a dispute of fact. RAF ¶¶ 22-23. Defendants cannot claim the sky is red, when all of the evidence indicates, including Defendants' own actions, that it is blue.

As there is no dispute that Defendants did not engage Plaintiff in the cooperative dialogue, Defendants attempt to muddy the waters by throwing several theories at the wall to see what sticks. First, Defendants argue that because *Plaintiff* did not make suggestions or offer alternative accommodations (other than his initial request to work from home) during the phone call with Defendant Goldman that this is evidence that Plaintiff failed to engage Defendants in the process. DMOL at 17-19. But this flips the burden on its head – the employer (not the employee) has the obligation to offer alternatives to the accommodation request and to discuss the feasibility of various proposed accommodations if the employer believes a request is unreasonable. *See e.g., Ramirez v. Temin & Co.,* Case No. 20-cv-6258, 2021 U.S. Dist. LEXIS 183760 at *51 (S.D.N.Y. Sept. 24, 2021). Defendants cannot deny that they didn't do this.[8]

Second, Defendants spend a lot of their brief discussing their covid-19 protocols, but they failed to even attempt to explain how these protocols relate in any way to Plaintiff's specific disabilities or how these protocols would alleviate Plaintiff's need to work from home in June 2020. DMOL at 17-19. Moreover, there is no evidence that Defendant Goldman tried or intended to raise these issues or to discuss *any* aspect of Plaintiff's accommodation request during their phone call. In fact, the record is clear that she had no intention trying to make Plaintiff's accommodation work – Defendant Goldman testified quite plainly (and brazenly) that she had decided prior to the phone call that Plaintiff was not allowed to work from home because she believed working from home was "not an accommodation." Plaintiff's Statement of Material Facts ¶ 88 (Dkt. No. 97); Kirschenbaum Decl., Ex. B (Dkt. No. 3), Jane Goldman Tr. 38:15-24 ("Q: Did you consider whether allowing him to work from home might be an accommodation? A: No, that's

---

[8] Amazingly, Defendants suggest that Plaintiff refused to engage in the process by refusing to discuss alternatives to working from home, even though Defendants cannot dispute that they didn't offer any alternatives to working from home. CMF ¶¶ 83-86.

not an accommodation."). Clearly, she had no plan or intention to engage Plaintiff in this dialogue – the purpose of which is to determine whether an accommodation is reasonable in the first instance. *See Hosking v. Memorial Sloan-Kettering Cancer Ctr.*, 126 N.Y.S. 3d 98, 103-105 (1st App. Dept. 2020) (explaining that the "whole purpose" of the cooperative dialogue is "to see whether the position …could be modified to accommodate plaintiff"). In short, she didn't engage in the dialogue because, as she testified, her mind was made up about Plaintiff's accommodation request – she didn't even consider it a possibility and she was going to deny it. To be clear, Defendants have completely doubled down, and they still insist, despite the abundance evidence to the contrary set forth herein, that Plaintiff's need to work from home necessarily meant that he could no longer work for Defendants.

## IV.    PLAINTIFF'S REQUEST FOR AN ACCOMODATION WAS THE CAUSE OF HIS TERMINATION

Defendants' story as to how Plaintiff's employment ended is confusing and contradictory. Unsurprisingly, it's not true. First, Defendants explicitly argue that Plaintiff resigned voluntarily. DMOL at 20. To support this position, Defendants rely on two pieces of evidence: 1) Defendant Goldman's testimony that Plaintiff "quit" and 2) the statement on Plaintiff's unemployment insurance paperwork, which Defendants filled out, that provides that Plaintiff "effectively" resigned.[9] DMOL at 20. However, despite the jargon, the word games, and the desire to maintain willful ignorance about the ramification of one's actions, a close reading of the records reveals that there is no dispute that Defendant Goldman terminated Plaintiff's employment. *See* Plaintiff's Memorandum of Law at 18-21 ("MOL") (Dkt. No. 96).

---

[9] Defendants also suggest that because, in his complaint and deposition, Plaintiff stated that he was "furloughed" that this allegation creates a dispute of fact precluding summary judgment. This is ridiculous. Regardless of the terminology used, Plaintiff's position has been consistent throughout this litigation – Defendant Goldman ended Plaintiff's employment because he requested to work from home.

When read in context of her entire testimony, Defendant Goldman's statement that Plaintiff "quit" can only reasonably be understood as her *interpretation* of Plaintiff's request for an accommodation and Plaintiff's undisputed statements to her during their phone call. She testified that Plaintiff "terminated his own employment" and that "[h]e retired, he resigned." Kirschenbaum Decl. Ex. B, Goldman Tr. 24:11-26:23. But Plaintiff's email did not say he was resigning, and, in fact, Defendant Goldman testified explicitly that, during their phone call, Plaintiff told her he was *not* resigning. *See Id.* ("Well Jeff, I guess that means you are retiring, and he said *no it doesn't mean that*…. And I said, Jeff, I'm going to take this as your retirement….you are refusing to come to work, and you have a pension. If that's what you're going with, go with your pension and enjoy your retirement." (emphasis added)). That Defendant Goldman refused to accept what Plaintiff was saying to her and what he had written to Judy Brener in black and white (that he wasn't quitting and that he needed to work from home because of his health conditions) does not create a dispute of fact on this issue. When an employee asks for a necessary medical accommodation, and the employer asks that employee to resign, and then the employee refuses to resign, and because of this refusal an employees' employment ends – this can only be understood as an involuntary termination. Put differently, if an employee cannot work anywhere but home and the employer does not allow the employee to work from home, then the employer has stopped allowing the employee to work for them. Simply put, it's a firing. Defendants' willful ignorance of this concept reveals the absurdity and weakness of Defendants' position in this case. This is why Defendants qualified Plaintiff's termination as an "effective" resignation on his unemployment paperwork – even though they knew that Plaintiff had not willfully resigned.[10] CMF ¶¶ 97-98. In short, the

---

[10] On his unemployment paperwork, Plaintiff appealed Defendants' designation that he had retired and won. As a result, Plaintiff received unemployment benefits, which he would not have been entitled to if it was found that he had retired. Kirschenbaum Decl., Ex. I (Dkt. No. 98-9).

material facts underlying what was said on the phone call relating to the end of Plaintiff's employment are not disputed. The dispute is in how to interpret these facts, but in this regard, Defendants' position – that Plaintiff's request to work from home and refusal to resign was in a fact a resignation – is simply irrational.

Nevertheless, Defendants can't keep their story straight. At the same time that Defendants argue that Plaintiff voluntarily resigned, Defendants also insist that Plaintiff fabricated his disability in order to bait Defendants into firing him so he could collect unemployment benefits. DMOL at 4-6. These stories are in direct contradiction to each other and cannot be reconciled. Either Plaintiff resigned (and gave up on his plan to get unemployment) or Plaintiff was fired (and tricked Defendants into paying for unemployment benefits). But Defendants cannot have it both ways. Fortunately, the undisputed facts are clear – every communication (written and verbal) from Plaintiff to Defendants indicated that he was attempting to continue working from home, but Defendants would not even consider this, and, as a result, his employment ended.

## V. DEFENDANTS WOULD NOT HAVE BEEN UNDULY BURDENED BY ALLOWING PLAINTIFF TO WORK FROM HOME

Because it is undisputed that they failed to engage with Plaintiff in a cooperative dialogue and, as a result, terminated Plaintiff's employment, Defendants are unable to argue that providing a reasonable accommodation would be unduly burdensome such that they can avoid liability. *See e.g., Hosking*, 126 N.Y.S. 3d at 103-105 (holding that an employer cannot show undue hardship if it is shown that they failed to engage in the cooperative process). In other words, Defendants missed their boat – their failure to engage Plaintiff at the time of his accommodation request renders their litigation argument, that allowing Plaintiff to work from home would be an undue hardship, irrelevant.

Nevertheless, Defendants' arguments that there is a dispute that Plaintiff's accommodation request was unreasonable and causes Defendant and undue hardship is unfounded. Defendants have put forth no evidence that, in June 2020, Plaintiff could not complete his job duties from home. Since they have no real evidence Defendants manufacture issues.

First, Defendants misrepresent Plaintiff's request to work from home by suggesting his request was to work from home forever. Defendants do not dispute that Plaintiff made the request to work from home in June 2020 before vaccines were available, before Plaintiff was vaccinated, and before Plaintiff was needed for in-person court appearances. CMF ¶¶ 44-46, 59. But contrary to Defendants' assertions, Plaintiff did not request that he be allowed to work from home forever or that he never be required to appear in the office in-person at any point in the future. DMOL at 22. Defendants read into Plaintiff's request the words "never again" and that is simply not there. Regardless, this is beside the point – Defendants have "the burden…to show the unavailability of *any* safe and reasonable accommodations." *Ramirez*, 2021 U.S. Dist. LEXIS 183760 at *51 (emphasis added). Everyone agrees that Defendants did not offer to allow Plaintiff to work from home for a limited time (i.e., until the courts re-opened, or until the vaccines were available). Everyone agrees that Defendants did not offer Plaintiff any other reasonable accommodation. In fact, Defendants still maintain that Plaintiff would not have been entitled to *any* accommodation. There is simply no evidence in the record to support such a hardline and unreasonable position.

Defendants' argument, made for the very first time in response to this motion, that Plaintiff could not have worked from home because of his "sub-par performance" should be ignored. First, Defendants do not provide any evidence that genuinely disputes Plaintiff's numerous facts supporting his assertion that his work was adequate during his work from home period and that Defendants never complained or raised an issue with his work prior to this motion. CMF ¶¶ 38-

42; *Omnipoint Commc'ns, Inc.*, 175 F. Supp. at 700. Instead, Defendants rely on two sentences in a last-minute declaration from Judy Brener stating that while working from home Plaintiff's job duties were not fully and effectively performed and that it was "necessary" that Plaintiff return to the office in order to fulfill his job duties. RMF ¶¶ 4-5. These general statements contradict Ms. Brener's previous testimony – that Defendants *needed* Plaintiff back in the office to share his institutional knowledge after 20 years of employment and act as a "mentor" to others. *See* Bauchner Decl., Ex. B, Brener Tr. 25:9-15, 26:15-19, 27:23-28:5 (Dkt. No. 105-2). This testimony – that Plaintiff needed to pass on institutional knowledge and mentor other employees – is incompatible with the contrived statement (made for the purposes of this motion) that Plaintiff's work was sub-par, and the Court should disregard it. *See Mack v. United States* 814 F.2d 120, 124-25 (2d. Cir. 1987) ("Factual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in [a party's] affidavit opposing summary judgment and that contradicts [the declarant's] prior testimony.").

Despite there being no contemporaneous documentary evidence of any complaints that Plaintiff's at-home work was sub-par, CMF ¶¶ 36-42, if the Court determines that Ms. Brener's single sentence affidavit creates a dispute of fact on this issue, it is simply not material. If Defendants were concerned about Plaintiff's at-home work performance, the time to address this was when he made his accommodation request and to use the cooperative dialogue process to determine if there were ways to address Defendants' purported concerns about Plaintiff's work performance. *See Hosking*, 126 N.Y.S. 3d at 103-105. This never happened. Again, the train has already left the station, and Defendants cannot cough up new concerns about Plaintiff's work performance that were never raised with Plaintiff or explored in Defendants' depositions as evidence of undue hardship.

Further, Judy Brener's "opinion" that Plaintiff needed to be in the office to fulfill his job duties, without further explanation or supporting facts, is a conclusion that is insufficient to create a material dispute as to whether it was necessary for Plaintiff to be in the office to carry out his job functions. Brener Decl. ¶ 5 (Dkt. No. 105-3); *See Rodriguez*, 1999 U.S. Dist. LEXIS 9741, at *4 n.3 (S.D.N.Y. June 29, 1999) (rule 56.1 statements "should not contain conclusions"). As we all recall, in June 2020 the vast majority of the New York City legal community was practicing law from their homes, which Plaintiff had been doing for the prior three months without a single complaint or issue. Defendants have provided absolutely no reason why Plaintiff could not have continued to do so at that time.

## VI. DEFENDANTS SGI AND SOLIL ARE A SINGLE EMPLOYER

This Court should deny Defendants' cross-motion for summary judgment on all the claims against Defendant SGI and grant summary judgment against Defendant SGI on Plaintiff's NYCRHL claim because, as fully explained in Plaintiff's opening brief, *see* MOL at 21-25, there is no material dispute of fact that Defendants Solil and SGI (collectively, "Corporate Defendants") are a single integrated enterprise.[11] Thus, because Defendants concede that Defendant Solil was Plaintiff's employer, under the single employer doctrine Defendant SGI is liable as Plaintiff's employer as well. CMF ¶ 9; *see Zuccarini v. PVH Corp.*, No. 151755/15, 2016 N.Y. Misc. LEXIS 673, at *3-4 (Sup. Ct. N.Y. County Feb. 29, 2016) ("Under New York law… the single…employer doctrine…allow[s] an employee to assert employer liability against an entity that is not formally his or her employer.").

First, Defendants do not address *any* of the relevant factors underpinning the single integrated employer doctrine that Plaintiff discusses at length in his opening brief. *Compare* MOL

---

[11] Defendants did not argue that Defendant Goldman was not Plaintiff's employer, and thus, appear to concede that she was for purposes of liability under the NYCHRL.

at 21-25 *with* DMOL at 11-14. Amazingly, Defendants do not even cite the legal standard for, or any of the relevant case law applying, this doctrine. In substance, Defendants have simply failed to respond to Plaintiff's argument that the Corporate Defendants were a single integrated employer. This is unsurprising, because, just as the Court in *Tesher v. Sol Goldman Invs., LLC*, Case No. 115878/06, 2011 N.Y. Misc. LEXIS 2664 (Supr. Ct. N.Y., June 3, 2011) found, the Corporate Defendants operate as single enterprise – with Defendant Solil running payroll and Defendant SGI managing the various real estate properties for Defendant Goldman's real estate empire. *See* MOL at 24-25.[12]

The most Defendants can muster is to argue that Defendant SGI doesn't "employ" anyone so they cannot be Plaintiff's "employer." MOL at 11-14. To support this assertion, Defendants rely on a single sentence in the affidavit of Judith Brener, the undisputed General Counsel for *both* Corporate Defendants, stating that "SGI does not employ any employees." Bauchner Decl. Ex. J at ¶ 2 (Dkt. No. 105-2, p. 275). First, the statement is a legal conclusion and should be disregarded. *See Rodriguez*, 1999 U.S. Dist. LEXIS 9741, at *4 n.3 (S.D.N.Y. June 29, 1999). Second, the statement is facially untrue, as the affiant is herself the General Counsel of SGI – i.e., an employee of SGI. But more importantly, Defendants' assertions are misguided because the single employer doctrine does not require a defendant to have formal employees to be liable as an "employer." *See Arculeo v. On-Site Sales & Marketing, L.L.C.*, 425 F.3d 193, 197-198 (2d Cir. 2005) ("There is well-established authority under this theory that, in appropriate circumstances, an employee, who is technically employed on the books of one entity, which is deemed to be part of a larger 'single-

---

[12] Defendants do not address *Tesher v. Sol Goldman Invs., LLC*, Case No. 115878/06, 2011 N.Y. Misc. LEXIS 2664 (Supr. Ct. N.Y., June 3, 2011), which found SGI and Solil jointly liable for similar claims. The Court found that SGI is the owner of over 100 individual real estate properties, each of which is organized as their own LLC; SGI is empowered to make all the decisions related to all of these properties, to make all the payments and other expenditures related to these properties; and that Defendant Solil is a payroll company with no independent revenue and merely cuts payroll checks to the employees in the enterprise and has no authority over SGI's properties. *Id.* at 21-22.

employer' entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer.").

At the core, Defendants are making the (plainly wrong) arguments that: A) an employee can have only one employer and thus the fact that Defendant Solil was Plaintiff's employer means that Defendant SGI cannot be Plaintiff's employer; and B) that an employer's own characterization of who its employees are carries the day. They are wrong on both counts. The law is very clear that employees can have multiple employers. *See e.g., Gonzalez v. Hanover Ventures Marketplace LLC*, Case No. 21-cv-1347, 2022 U.S. Dist. LEXIS 11473 at *10 (S.D.N.Y. Jan. 21, 2022) (holding two distinct defendants liable as employers under the single enterprise employer doctrine); *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014) (same). And an employer's own views on whether they employ an individual is not dispositive, or particularly relevant, to whether an individual is an employee. *See e.g., Hart v. Rick's Cabaret, Int'l, Inc.*, 967 F. Supp. 2d 901, 924 (S.D.N.Y. 2013) ("[I]t is not significant how the parties defined the employment relationship"). Defendants are either uninformed or willfully blind to the realities of the single employer doctrine

Defendants mistakenly contend that because Defendant Solil issued Plaintiff's W-2's and Plaintiff dutifully filed his W-2's with his taxes that Defendant SGI cannot be Plaintiff's "employer." DMOL at 13-14. It appears that Defendants do not have the commonsense awareness of how the issuance of W-2's (and other tax documents) work – the decision of how and whether to issue a W-2 rests with the entity paying an employee's wages, not with the employee. Courts recognize this and therefore put little to no weight on this type of evidence. *See e.g. Leevson v. Aqualife USA, Inc.*, No. 14-cv-6905, 2017 U.S. Dist. LEXIS 163037, at *17-18 (E.D.N.Y. Sept. 28, 2017) ("Employers often classify or require their employees to self-classify in a manner that is incorrect under the labor laws, but beneficial to the employer."); *Hart*, 967 F. Supp. 2d at 924

("[I]t is not significant…how the worker identified herself on tax forms"). Further, nothing can be gleamed from the fact that Plaintiff filed his taxes using the forms Defendant Solil issued to him. This is what every employee does regardless of whether the tax documents are fully reflective of the employment relationship. *See e.g., Agerbrink v. Model Serv. LLC*, No. 14 CV 7841, 2017 U.S. Dist. LEXIS 33249, at *18-19 (S.D.N.Y. Mar. 8, 2017) ("It would be a bold worker indeed who, notwithstanding the fact that she is paid as an independent contractor, nevertheless files her taxes as an employee, thereby exposing her employer to potential tax liabilities."). Nevertheless, it is unclear what Defendants propose Plaintiff should have done if he believed that Defendant SGI was his employer. Should he have requested a second W-2 from Defendant SGI? Or how should a single integrated enterprise issue tax forms to their employees? Should each separate entity issue a W-2 for all wages paid? Or should they split the wages evenly between each entity? Just like Defendants' arguments on this issue, all of these scenarios are ridiculous, make no sense, and reveal a lack of understanding of how these tax forms, and other employer created documents, work in real life.

Nevertheless, Defendants' insistence that Defendant SGI does not have any employees on the books and that Defendant Solil was Plaintiff's "only employer" just supports Plaintiff's argument that the Corporate Defendants were operationally interdependent and are "in truth… division[s] or departments of a single enterprise." *Clinton's Ditch Cooperative Co. v. NLRB*, 788 F.2d 132, 137 (2d Cir. 1985). Defendants admit that the Corporate Defendants share the same office, CMF ¶ 13, have the same ownership and general counsel, CMF ¶¶ 10-13, 24, have no formal retainer agreement between them under which Plaintiff represented Defendant SGI, CMF ¶ 16, that Defendant SGI owned and managed all of the properties that Plaintiff represented during his employment, CMF ¶¶17-18, 22-23, that Defendant SGI asserted financial control over the

various properties Plaintiff represented, CMF ¶18, and that Defendant Solil did not generate any of its own revenue, CMF ¶ 19. With these admissions, it is clear that the reason Defendant SGI had no employees on the books is because it's role in the enterprise was to manage the various properties and the role of Defendant Solil (who had no independent revenue) was to run payroll for the management of these properties. In sum, Defendants' contention that Defendant SGI "had no employees" and that Defendant SGI employed Plaintiff on the books supports Plaintiff's single employer argument.

Incredibly, instead of arguing that there is a dispute of fact as to whether the Corporate Defendants were a single employer, Defendants cross-moved for summary judgment on the basis that there was no dispute of fact that Defendant SGI was not Plaintiff's direct "employer" under the statutory definition of "employer" in the NYCHRL. DMOL at 11-14. However, this argument is simply not dispositive as to whether Defendant SGI can be held liable under the single employer doctrine. If, as everyone agrees, Defendant Solil was Plaintiff's employer, and Defendant SGI was integrated with them, then Defendant SGI can be held liable as an employer. *See Arculeo*, 425 F.3d at 197. This doctrine specifically allows for a defendant who is not a plaintiff's formal employer to be held liable as an employer because the defendant is so interconnected with the plaintiff's formal employer that they constitute a single enterprise. *Id*. Thus, whether Defendant SGI meets the statutory definition of Plaintiff's "employer" under the NYCHRL is not dispositive of whether Defendant SGI can be held liable under the NYCHRL.

Nevertheless, there is ample support in the record that Defendant SGI was Plaintiff's "employer" as defined under the NYCHRL. A central element in this analysis is whether Defendant SGI had "the power to control [Plaintiff's] conduct." *Burhans v. State*, No. 152906/14, 2015 N.Y. Misc. LEXIS 9641, at *12 (Sup. Ct. Jan. 7, 2015). Here, Defendants admit that

Defendant Goldman is a manager of SGI, CMF ¶ 12, Defendant Goldman had plenary authority over Plaintiff's employment, CMF ¶¶30-32, Defendant SGI owned and managed all of the properties that Plaintiff represented during his employment, CMF ¶¶17-18, 22-23, and Defendant Goldman had sole authority over settling all cases that Plaintiff worked on, on behalf of Defendant SGI, CMF ¶¶ 21-23. Thus, there is sufficient evidence in the record for a jury to find that Defendant Goldman's power and authority over Plaintiff's work and employment arose from her position as a manager of Defendant SGI, making Defendant SGI his employer under the definition in the NYCHRL. As such, summary judgment for Defendant SGI should be denied and the Court should grant summary judgment in favor of Plaintiff.

## CONCLUSION

The material facts are simple and not in dispute. In the spring of 2020 as the first wave of the covid-19 pandemic raged in New York City, all of Defendants' employees, including Plaintiff, were working from home. Plaintiff suffers from underlying health conditions that make him especially susceptible to illness and death if he contracts covid-19. In June 2020 when Defendants implemented their return-to-work policy, Plaintiff sent an email explaining to his supervisor that, because of his health conditions, he had to continue working from home for the time being and provided them with a doctor's note. Defendant Goldman then called Plaintiff on the phone, and told him, unilaterally, that his job could not be performed from home and that if he wasn't willing to risk his life to come into the office, he no longer had one. Defendant Goldman did not discuss what his health conditions were, whether he could do the job from home, or whether there were other accommodation alternatives – her mind was already made up. As evidence by her own words and actions she unilaterally denied his accommodation request, and as a result, Plaintiff's employment was terminated.

For the fore going reasons, the Court should grant Plaintiff's Motion for Partial Summary Judgment on his NYCHRL disability discrimination claim and deny Defendant SGI's cross-motion for summary judgment on all claims.

Dated: New York, New York

April 15, 2022

By: _____*s/Maimon Kirschenbaum*_____
D. Maimon Kirschenbaum
Michael DiGiulio
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
212-688-5640

*Attorneys for Plaintiff*