```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  9/27/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JEFFREY M. GOLDMAN,

                Plaintiff,

-against-

SOL GOLDMAN INVESTMENTS LLC, SOLIL MANAGEMENT, LLC and JANE H. GOLDMAN,

                Respondent.

1:20-cv-06727-MKV-SN

**MEMORANDUM ORDER ADOPTING REPORT AND RECOMMENDATION**

---

MARY KAY VYSKOCIL, United States District Judge:

      Plaintiff Jeffrey M. Goldman brings this suit against his former employers, Sol Goldman Investments LLC ("SGI"), Solil Management, LLC ("Solil"), and Jane H. Goldman, alleging violations of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*; the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.* ("NYCHRL").  First Amended Complaint [ECF No. 18].  Plaintiff moves for partial summary judgment for liability on his NYCHRL disability discrimination claim against all Defendants.  Motion for Summary Judgment [ECF No. 95]; Memorandum of Law [ECF No. 96] ("Pl. Mem.").  Defendant SGI cross-moves for summary judgment.  Cross Motion for Summary Judgment [ECF No. 104]; Memorandum of Law in Opposition [ECF No. 105] ("Def. Mem.").

      Magistrate Judge Sarah Netburn issued a thorough and carefully reasoned Report and Recommendation (the "Report") suggesting that this Court grant Plaintiff's motion for partial summary judgment against all Defendants and deny Defendant SGI's cross-motion for summary judgment.  Report and Recommendation [ECF No. 113] ("Report").  Defendants filed objections.

Defendant Objections [ECF No. 114] ("Def. Obj."). Plaintiff filed an opposition. Opposition Brief [ECF No. 117]. For the reasons set forth below, this Court ADOPTS the Report in full.

## BACKGROUND

The relevant facts are set forth in the Report and the Court assumes familiarity with them. Plaintiff began working as in-house counsel for Solil beginning in June 2000. *See* Defendant's Counterstatement of Material Facts ¶ 1 [ECF No. 105-1] ("DCMF"). In March 2020, Defendants instructed Plaintiff, and the rest of their legal staff, to work from home due to the onset of the COVID-19 pandemic. *Id.* ¶ 33. A few months later in June 2020, Defendants requested that all employees return to work in person. *Id.* ¶ 61. At the time, Plaintiff was 69-years old and suffered from obesity, hypertension, and coronary artery disease. *Id.* ¶¶ 47–52. On the advice of his doctor, Plaintiff requested that he be permitted to continue working from home because his conditions "put him at a higher risk to work in an office building or the courts in New York City" in light of the ongoing pandemic. *Id.* ¶ 62; Exhibit F [ECF No. 98-6] ("Katz Note").

Plaintiff asserts that Defendants violated the NYCHRL by failing to conduct a cooperative dialogue in response to his request. DCMF ¶¶ 71, 83–87; *see also* Pl. Mem. 1–2. Plaintiff further contends that Defendants denied Plaintiff's request to work from home and, as a result, his employment ended. DCMF ¶ 89; *see also* Pl. Mem. 1–2. In response, Defendants argue that Plaintiff did not request an accommodation, that Plaintiff refused to participate in a cooperative dialogue, and that in all events, Plaintiff working from home would have constituted an undue hardship. *See* Def. Mem. 14–19, 22–23. Defendants further allege that Solil was Plaintiff's sole employer, and therefore ask that SGI be dismissed from the action. *Id.* 11–14.

Magistrate Judge Netburn recommended a finding for Plaintiff on both motions. The Report concluded that Plaintiff established a prima facie case for failure to accommodate because

Defendants refused to make a reasonable accommodation, to show that such an accommodation would have posed an undue hardship, or to engage in a cooperative dialogue. Report 16–22. The Report also found that Plaintiff made out a discriminatory discharge claim because Defendants terminated Plaintiff in response to his request for a reasonable accommodation. Report 22–24. Finally, the Report determined that SGI may be held jointly liable with Solil—regardless of whether Solil was "Plaintiff's formal employer"—because the two entities operate as a single integrated enterprise. Report 13–16.

Defendants raise four objections to the Report. First, Defendants argue that Plaintiff does not have a disability under the NYCHRL and, even if he did, Solil was not aware of it. Def. Obj. 4–9. Second, they contend that Defendants endeavored to engage in a cooperative dialogue, but Plaintiff failed to participate. Def. Obj. 10–15. Third, Defendants allege that there is a genuine dispute of material fact as to whether Plaintiff was fired. Def. Obj. 15–17. Fourth, Defendants assert that SGI was not Plaintiff's employer and therefore cannot be liable. Def. Obj. 17–18.

## LEGAL STANDARDS

### I. Report and Recommendation

In reviewing a Report and Recommendation, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where, like here, there are objections, the district judge must determine de novo any part of the magistrate judge's disposition to which a proper objection has been made. Fed. R. Civ. P. 72(b)(3); *see also United States ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc. v. Westchester Cnty., N.Y.*, 712 F.3d 761, 768 (2d Cir. 2013). However, where the objecting party makes only "conclusory or general objections, or simply reiterates [its] original arguments," this Court applies the clearly erroneous standard of review. *Friedman v. Cap. Accts., LLC*, No.

19CV7262VBJCM, 2021 WL 1721665, at *1 (S.D.N.Y. Apr. 30, 2021).[1]

### II. Summary Judgment

To prevail on a motion for summary judgment, the movant must show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The moving party bears the initial burden of demonstrating that no genuine factual dispute exists and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It may satisfy this burden by "showing that the materials cited do not establish the . . . presence of a genuine dispute." *Garcia v. JonJon Deli Grocery Corp.*, No. 13 CIV. 8835 AT, 2015 WL 4940107, at *2 (S.D.N.Y. Aug. 11, 2015) (quoting Fed. R. Civ. P. 56(c)(1)(B)). If the movant satisfies its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). But "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) (quoting *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996)).

## DISCUSSION

### I. Plaintiff Suffers from a Disability and Defendants Were on Notice of that Disability

First, Defendants object to the Report's finding that Plaintiff is "a person with a disability under the meaning of" the NYCHRL. Report 16; Def. Obj. 4. But Defendants offer no evidence

---

[1] Defendants' four objections are similar to arguments they already raised before Magistrate Judge Netburn. *See generally* Def. Mem. This Court applies de novo review to analyze all of Defendants' arguments.

indicating that Plaintiff *did not* suffer from obesity, hypertension, and coronary artery disease. *See* DCMF ¶¶ 47–52. Nor do they offer authority or argument to suggest these ailments do not qualify as disabilities under the NYCHRL, which broadly defines a disability as "*any* physical, medical, mental or psychological impairment." N.Y.C. Admin. Code § 8-102 (emphasis added).

Instead, the thrust of Defendants' objection appears to be that Defendants were not *on notice* of Plaintiff's disability. That argument, too, is contradicted by the facts and the law. The June 17, 2020 email made clear that Plaintiff had "a number of underlying health issues," "consulted with [his] physician," and as a result, determined he would "not be able to return to court" or "the office," but that he *would* be able to "continue working from home." Plaintiff's Objections and Responses to Defendants' Statement of Additional Material Facts ¶ 9 [ECF No. 110]. Defendants acknowledge receipt of this email. DCMF ¶ 64. Then, after receiving the email, Defendants admit that SGI's General Counsel Judith Brenner asked Plaintiff to "support his request" with a doctor's note. *Id.* ¶ 66. Plaintiff complied by submitting a note from his physician, Dr. Katz. *Id.* ¶¶ 66–67; *see* Exhibit F [ECF No. 98-6] ("Katz Note"). In that note, Dr. Katz stated his "medical opinion" that Plaintiff's "underlying conditions . . . put him at a higher risk to work in an office building or the courts in New York City." Katz Note. Dr. Katz noted, however, that Plaintiff was "fully able to continue working from home as he [had] been during the ongoing" pandemic. *Id.*

Taken together, the email and doctor's note clearly put Defendants on notice of Plaintiff's "physical [or] medical . . . impairment." N.Y.C. Admin. Code § 8-102; *see Romanello v. Intesa Sanpaolo, S.p.A.*, 22 N.Y.3d 881, 883, 885, 998 N.E.2d 1050, 1051, 1053, 976 N.Y.S.2d 426, 427, 429 (N.Y. 2013) (The plaintiff "made his disability known to [his employer]" after counsel provided a letter stating that the plaintiff was "suffering from severe and disabling illnesses that

5

. . . prevented him, and continue[d] to prevent him, from working in any capacity."); *see also Coronado v. Weill Cornell Med. Coll.*, 66 Misc. 3d 404, 411, 114 N.Y.S.3d 193, 200 (N.Y. Sup. Ct. 2019) ("Plaintiff did request an accommodation . . . when she submitted a note from her obstetrician to defendants . . . advising that plaintiff was pregnant and was to avoid specified activities.").

Although Defendants argue that the email and doctor's note "did not specify what medical conditions Plaintiff claimed to have," they cite no authority indicating such specificity is required. Def. Obj. 6. Indeed, in *Romanello*, the New York Court of Appeals found the defendant employer was put on notice of the plaintiff's disability by a vague reference to his "severe and disabling illnesses" in a letter written by his counsel. 22 N.Y.3d at 883, 998 N.E.2d at 1051, 976 N.Y.S.2d at 427.

Similarly, Defendants make much of the fact that Plaintiff's email "did not contain any request whatsoever." Def. Obj. 6 (emphasis omitted). However, "a request for accommodation need not take a specific form" and also "need not mention the statute, or the term 'reasonable accommodation.'" *Reed v. Nike, Inc.*, No. 17 CIV. 7575 (LGS), 2019 WL 2327519, at *3 (S.D.N.Y. May 31, 2019) (quoting *Phillips v. City of New York*, 66 A.D.3d 170, 189 & n.24, 884 N.Y.S.2d 369, 383, 382 n.24 (1st Dep't 2009)). Plaintiff's email and Dr. Katz's note made clear that, in light of Plaintiff's conditions, he could not return to the workplace, but was able to work from home. This is a clear request that Plaintiff be permitted to work from home, *i.e.*, an accommodation. Plaintiff's failure to phrase the request as a question is, therefore, immaterial. Accordingly, after conducting a de novo review, this Court finds no genuine dispute that Plaintiff suffered from a disability under the NYCHRL, and that Defendants were on notice of it.

## II. Defendants Failed to Engage in a Cooperative Dialogue

Defendants next contend that the Report erred in finding that Defendants did not engage in a cooperative dialogue. Def. Obj. 10–15. Instead, they claim "it was Plaintiff who failed to engage in a good faith dialogue with Defendants." *Id.* 10.

The NYCHRL makes it unlawful "for an employer, labor organization or employment agency or an employee or agent thereof to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation or who the covered entity *has notice may require such an accommodation*." N.Y.C. Admin. Code § 8-107(28)(a) (emphasis added).[2]  A "cooperative dialogue" is defined as "the process by which a covered entity and a person entitled to an accommodation, or who may be entitled to an accommodation . . . engage in good faith in a written or oral dialogue concerning the person's accommodation needs; potential accommodations that may address the person's accommodation needs, including alternatives to a requested accommodation; and the difficulties that such potential accommodations may pose for the covered entity." N.Y.C. Admin. Code § 8-102.

Defendants did not engage in a cooperative dialogue with Plaintiff. Brenner initially responded to Plaintiff's June 17, 2020 email by simply stating: "You are our court attorney!!!! Help!" DCMF ¶ 65. When Defendant Goldman called Plaintiff on June 24, 2020, she did not request additional information or discuss alternative accommodations. Indeed, when asked at her

---

[2] In their brief, Defendants emphasize the words "or an employee" in the statute, perhaps in an attempt to suggest that the NYCHRL prohibits Plaintiff—the employee *requesting an accommodation*—from refusing to engage in the process. Def. Obj. 10. Assuming this raises a statutory objection, the Court rejects this interpretation. Reading the statute's words "in their context," *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1888 (2019), the phrase "or an employee" is included in a larger list of entities that are required to "engage in a cooperative dialogue." But this list does not stand alone. Instead, the statute tells us that this list of entities is required to engage in a dialogue "*with a person who has requested an accommodation*." The "employee" at the beginning of the sentence therefore cannot be the *same person* that "requested an accommodation." Accordingly, the Court is not persuaded by the suggestion that this provision of the NYCHRL makes it unlawful for *Plaintiff* "to refuse or otherwise fail to engage in a cooperative dialogue."

7

deposition if she spoke with Plaintiff about "accommodating his request to work from home," Defendant Goldman testified that working from home was "not an accommodation." Deposition of Jane H. Goldman 38:4–19 [ECF No. 98-2] ("Goldman Depo."). Similarly, when asked if she "engage[d] with [Plaintiff] in an interactive process," Defendant Goldman replied "no." *Id.* at 38:24–39:3.

Despite this record evidence, Defendants allege that Brenner and Defendant Goldman "attempted to constructively engage with Plaintiff," but that Plaintiff "spurned those efforts at every juncture notwithstanding his own obligation to proceed in good faith." Def. Obj. 11. Defendants offer little support suggesting this forecloses summary judgment. Their one source of authority, *Strong v. Fernandez*, 188 A.D.3d 1590, 133 N.Y.S.3d 377 (4th Dep't 2020), is distinguishable because it addressed an employee's obligations to engage in an interactive process under the New York *State* Human Rights Law, not the New York *City* Human Rights Law. *See* 188 A.D.3d at 1592, 133 N.Y.S.3d at 380–81. But the state statute provides more limited protections for employees requesting accommodations. *See Hosking v. Mem'l Sloan-Kettering Cancer Ctr.*, 186 A.D.3d 58, 63–64, 126 N.Y.S.3d 98, 102–03 (1st Dep't 2020); *Romanello*, 22 N.Y.3d at 884–85, 998 N.E.2d at 1052–53.

Additionally, in *Strong*, the employee failed "to respond to his employer's request for medical information." 188 A.D.3d at 1592, 133 N.Y.S.3d at 381 (cleaned up). That simply did not happen here. When Brenner asked Plaintiff for a doctor's note to support his request, Plaintiff complied and provided a letter from Dr. Katz "[s]hortly thereafter." DCMF ¶¶ 66–67. Brenner's other alleged communications with Plaintiff did not "request" medical (or any) information. First, Brenner emailed Plaintiff stating "You are our court attorney!!!! Help!" DCMF ¶ 65. Second, Brenner testified that she called Plaintiff at some point after receiving his email but did not leave

8

a voicemail. Bauchner Declaration Exhibit B 46:23–47:17; 49:5–50:15 [ECF No. 105-2]. Neither communication involved a "request for information," never mind one that Plaintiff failed to "meaningful[ly] respon[d]" to. *See Strong*, 188 A.D.3d at 1592, 133 N.Y.S.3d at 380. Thus, *Strong* is not analogous on the facts or law, and does not control this Court's analysis.

Defendants also belabor their theory that Plaintiff "concocted [a] plan to get fired." Def. Obj. 12. However, Defendants provide no authority suggesting that Plaintiff's motivations—however devious—modify an employer's NYCHRL obligations. Even accepting these assertions as true, Defendants fail to evince any dispute of a *material* fact. *See Brown*, 654 F.3d at 358.

Finally, Defendants detail the safety measures implemented throughout their offices in response to the COVID-19 pandemic. Def. Obj. 14–15. While admirable, these measures are irrelevant. A cooperative dialogue must discuss "*the person's* accommodation needs." N.Y.C. Admin. Code § 8-102. The *general* accommodations Defendants made "to protect employees from COVID-19" does not speak to the accommodations that *Plaintiff* required. Def. Obj. 14. As such, after conducting a de novo review, this Court finds no genuine dispute that Defendants failed to engage in a cooperative dialogue under the NYCHRL.

### III. The Record Shows that Defendants Terminated Plaintiff's Employment

Defendants suggest that there is a genuine issue of material fact as to whether Plaintiff was fired or voluntarily separated. Def. Obj. 15–17. They point to Defendant Goldman's deposition testimony asserting that Plaintiff "retired" and "resigned." Goldman Depo. 24:18–20.

This self-serving testimony is insufficient to defeat a summary judgment award, *see Patterson v. Patterson*, No. 20-CV-02552 (PMH), 2022 WL 356513, at *6 (S.D.N.Y. Feb. 7, 2022), particularly in light of Defendant Goldman's later testimony demonstrating that she had merely *interpreted* Plaintiff's "intention of [not] coming back to the office" *to mean* that he was

9

"retiring," Goldman Depo. at 25:2–16; *see also id.* at 25:14–15 ("I said, Well, Jeff I guess that means you're retiring. And he said, *No, that doesn't mean that.*" (emphasis added)); *id.* at 25:23–25 ("I said, Jeff, I'm going to take this as your retirement."); *id.* at 26:3–6 ("You're refusing to come to work, and you have a pension. If that's what you're going with, go with your pension and enjoy your retirement."); *id.* at 26:15–19 ("So if he stopped going to court, and he's not coming to work—his job did not entail working from home, and he never stated if, when he would ever return to court, *so I assumed he was quitting*." (emphasis added)). Further, Defendants do not contest that, immediately after the phone call between Plaintiff and Defendant Goldman, Defendants shut off Plaintiff's access to his work email and computer and terminated his health insurance benefits. DCMF ¶¶ 92–93. Given this evidence, and after conducting a de novo review, this Court finds no genuine dispute that Plaintiff was terminated in response to his request to work from home.

### IV. SGI and Solil Operate as a Single Employer

Finally, Defendants repeat their assertion that SGI did not employ Plaintiff, and therefore cannot be held liable. Def. Obj. 17–18. Defendants do not object to the Report's application of the single employer doctrine. *Id.*

"A single employer situation exists where two nominally separate entities are actually part of a single integrated enterprise." *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005) (cleaned up). "[I]n appropriate circumstances, an employee, who is technically employed on the books of one entity, which is deemed to be part of a larger 'single-employer' entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer." *Id.* To evaluate whether two entities operate as a single employer, the Second Circuit considers six factors: (1) the interrelation of operations, (2) common management, (3) centralized control of

labor relations, (4) common ownership, (5) the use of common office facilities and equipment, and (6) family connections between or among the enterprises. *See United Union of Roofers, Waterproofers, & Allied Workers Local No. 210 v. A.W. Farrell & Son, Inc.*, 547 F. App'x 17, 19 (2d Cir. 2013).

The uncontested record evidence demonstrates that SGI and Solil operate as a single employer. First, the companies share a common management. Defendant Goldman was a decisionmaker for both Solil and SGI, and Brenner was the general counsel for both entities. DCMF ¶¶ 10–12, 24. Both Goldman and Brenner supervised Plaintiff, and were involved in responding to Plaintiff's email. *Id.* ¶¶ 3, 22, 23, 31, 62, 65, 66, 75, 76. Second, there is a common use of facilities, as Solil and SGI operate out of the same office space. *Id.* ¶ 13. Third, the record shows an interrelation of operations because Defendants concede that, as an employee of Solil, Plaintiff did legal work for SGI, and there was no formal retainer agreement governing Plaintiff's representation of SGI. *Id.* ¶¶ 7, 9, 14–16. Fourth, the record also indicates family connections and common ownership between the enterprises. Specifically, when asked about her role at Solil, Defendant Goldman testified that her "family" owns "hundreds of companies." Goldman Depo. 19:18–21:7.[3] Accordingly, the Court finds that SGI and Solil operate as a single employer.

Defendants argue that Plaintiff considered Solil to be his employer "for all intents and purposes." Def. Obj. 17. But it is undisputed that Solil was Plaintiff's employer. DCMF ¶ 9. The question, instead, is whether SGI may be held *jointly liable* with Solil. Because Defendants do not offer authority responding to that point, they have failed to "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358.

---

[3] Defendants object to the "characterization" of Defendant Goldman's "family" as "undefined," *see* DCMF ¶ 17, but this assertion is at odds with Defendant Goldman's own testimony. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001) ("Where, as here, the record does not support the assertions in a Local Rule 56.1 statement, those assertions should be disregarded and the record reviewed independently.").

The New York Supreme Court's opinion in *Tesher v. Sol Goldman Investments, LLC*, No. 115878/06, 2011 WL 2513499 (N.Y. Sup. Ct. May 31, 2011), does not undermine this conclusion. There, the plaintiff sought to recover damages for personal injuries sustained after falling on the sidewalk in front of a building owned by an SGI subsidiary. 2011 WL 2513499, at *1. The plaintiff there was not an employee of SGI, Solil, or any related entity, and the Supreme Court did not address the single employer doctrine. *Tesher* therefore bears little relevance to this case.

## CONCLUSION

For the above reasons, the Defendants' objections are overruled. The Report is ADOPTED in its entirety. Plaintiff's motion for partial summary judgment is GRANTED against all Defendants. Defendant SGI's cross-motion for summary judgment is DENIED.

The Clerk of Court is respectfully requested to terminate docket entries 95 and 104.

**SO ORDERED.**

**Date: September 27, 2022**
**New York, NY**

*/s/ Mary Kay Vyskocil*
**MARY KAY VYSKOCIL**
**United States District Judge**